**MANU INTERNATIONAL, S.A.,**
**Plaintiff-Appellant,**

v.

**AVON PRODUCTS, INC.,**
**Defendant-Appellee.**

**No. 381, Docket 80–7575.**

United States Court of Appeals,
Second Circuit.

Submitted Nov. 12, 1980.

Decided Jan. 20, 1981.

Freeman, Meade, Wasserman & Schneider, New York City (Melvyn Freeman, Lawrence S. Fogelson, New York City, of counsel), for plaintiff-appellant.

Breed, Abbott & Morgan, New York City (Stephen R. Lang, H. Barry Vasios, New York City, of counsel), for defendant-appellee.

Before LUMBARD, MANSFIELD and VAN GRAAFEILAND, Circuit Judges.

MANSFIELD, Circuit Judge:

On July 18, 1979, Manu International, S.A. ("Manu"), a Belgian corporation, brought suit in the District Court for the Southern District of New York against Avon Products, Inc. ("Avon"), a New York corporation with its principal offices in New York, seeking damages for alleged fraud in obtaining disclosure from Manu, a middleman, of its Taiwanese source of handbags supplied to Avon and then by-passing Manu to deal directly with the source. On May 28, 1980, the district court, Leonard B. Sand, J., granted Avon's renewed motion to dismiss the action on grounds of *forum non conveniens* on condition that Avon consent to jurisdiction in Taiwan. Manu appeals this dismissal. We reverse on the ground that the district court exceeded the limits of its discretion in the matter.

Beginning in 1975 Manu entered into a business relationship with Avon Overseas Limited ("AOL"), a London-based wholly-owned subsidiary of Avon which is responsible for handling Avon's European markets. Manu supplied Avon with a product called the "Beauty Showcase," a high quality fabric handbag which Manu had manufactured for AOL in Taiwan. Manu claims that it designed the bag. Avon alleges that the bag was designed by an AOL employee. In any event, the bags were manufactured for Manu by independent producers in Taiwan, using what Manu claims were "confidential systems, techniques and methods of production" based on know-how developed over 30 years and disclosed only to Manu's exclusive representative in Taiwan, an individual named Lawrence Chu.

The relationship between Manu and Avon soon took a turn for the worse. In July of 1977, Avon established its Far East Buying Office ("FEBO") as a division of Arlington Limited ("Arlington"), a Bermuda corporation which is also a wholly-owned subsidiary of Avon. The purpose of the FEBO was to handle all products being made or which might be made in the Far East for Avon subsidiaries throughout the world. One obvious consequence of the establishment by Avon of its own buying office in the Far East was that European middlemen like Manu became less important. Shortly after the formation of the FEBO and its location

in Hong Kong, C. H. Dams of AOL in London wrote Manu advising it that no items manufactured in the Far East would be purchased from importers or agents in Europe and that if Manu wished to maintain its business connection with Avon, Manu's manufacturing locations or their sales agencies in the Far East would have to contact the manager of the FEBO, an individual named John Kitchener.

During the summer of 1977, Nicholas Bova, an Avon Vice President based in New York, visited Taiwan and while there met with Chu, Manu's Taiwan "manager." Later Chu and Kitchener communicated with each other and Avon concedes that Chu is currently an agent in Taiwan for one of Avon's foreign subsidiaries. The parties disagree over the circumstances surrounding Bova's meeting with Chu, the latter's subsequent contact with Kitchener, and the explanation for Chu's shift from Manu to Avon. Avon contends that Manu, in the hope of maintaining some influence with the new FEBO, asked for the meeting between Bova and Chu. Manu claims that, after resisting some Avon efforts to discover the identity of Manu's representative in Taiwan, it finally consented to disclose that information in response to a representation by Dams that an Avon vice president (who turned out to be Bova) was to be in Taiwan and wanted to inspect Manu's operation there to determine if it had the capacity to handle production of the Beauty Showcase for American markets. This fraudulent representation, Manu claims, was a cover-up for Bova's real purpose, which was to find out the sources of Manu's production in Taiwan and lure them into direct dealing with the FEBO.

Amid all the controversy certain facts seem to be established. Bova, who is based in New York, did meet with Chu in Taiwan. Together they visited manufacturing sources able to produce the Beauty Showcase, one of which may have been the actual Manu production source. Chu is now working for Kitchener and the FEBO. AOL no longer purchases any products from Manu. According to Manu, this state of affairs has not resulted from legitimate business practices but instead from Avon's use of fraud to by-pass it.

The complaint purports to allege four separate claims. The first is that Avon tortiously interfered with a contract said to exist between Chu and Manu covering Chu's services. The second is that Avon fraudulently obtained Chu's identity, which allowed it to appropriate his services and sources. The third is that the sources and methods of manufacture of the Beauty Showcase were confidential trade secrets and were misappropriated by Avon. The fourth claim alleges that the foregoing acts were the product of a conspiracy among Avon, AOL and Arlington. In granting Avon's motion to dismiss on grounds of *forum non conveniens* Judge Sand concluded that Taiwan is the "focal point" of the litigation, that the issues must be decided according to Taiwanese law, and that there is "little 'local interest' in having this controversy decided before this forum," i. e., the Southern District of New York.

## DISCUSSION

◼ Whether an action may be dismissed for *forum non conveniens* when jurisdiction is otherwise properly invoked is governed by the factors outlined in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). As we have often noted in this Circuit, these factors break down into those relating to the "private interests" involved and to the "public interest," which must also be considered. *Alcoa Steamship Co. v. M/V Nordic Regent*, 636 F.2d 860 at 864, (2d Cir. 1980) (*en banc*) ("*Alcoa III*"), *cert denied*, —— U.S. ——, 101 S.Ct. 248, 66 L.Ed.2d 116 (1980). The private interests concern the "practical problems that make trial of a case easy, expeditious and inexpensive" (ease of access to proof, availability of compulsory process, cost of obtaining willing witnesses' attendance), the likelihood of obtaining an enforceable judgment and the "relative advantages and obstacles to a fair trial." 330 U.S. at 508, 67 S.Ct. at 843. The public interest factors involved include the prob-

lems of court congestion, jury duty, local interest in the controversy and the advantages of having a court familiar with the law which is being applied. *Id.* at 508–09, 67 S.Ct. at 843. If a district court properly analyzes these factors, its *forum non conveniens* dismissal will not be reversed unless an abuse of discretion is found.

Emphasis on the district court's discretion, however, must not overshadow the central principle of the *Gilbert* doctrine that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.* at 508, 67 S.Ct. at 843. Additionally, there has been much recent sentiment in this Circuit for evaluating the *forum non conveniens* factors in light of the increased speed and ease of travel and communication which makes, especially when a key issue is the location of witnesses, no forum "as inconvenient [today] as it was in 1947." *Fitzgerald v. Texaco, Inc.*, 521 F.2d 448, 457 (2d Cir. 1975) (Oakes, J., dissenting); *see also id.* at 454 (Mansfield, J., concurring). Judge Newman's recent concurrence in *Calavo Growers of Cal. v. Generali Belgium*, 632 F.2d 963 (2d Cir. 1980), reflects a concern for both of these considerations. He states that the "controlling principles" of *forum non conveniens* are

> "First, the plaintiff's choice of forum is to be respected unless the balance of both public and private interests strongly justifies a transfer.
>
> \* \* \* \* \* \*
>
> "Second, the assessment of whether the balance of public and private interests strongly overcomes the plaintiff's choice of forum must be made in light of the realities of modern transportation and communications. A forum is not necessarily inconvenient because of its distance from pertinent parties or places if it is readily accessible in a few hours of air travel. It will often be quicker and less expensive to transfer a witness or a document than to transfer a lawsuit. Jet travel and satellite communications have significantly altered the meaning of 'non conveniens.'

> "There is an understandable temptation in a busy district like the Southern District of New York to transfer cases that can as appropriately or even slightly more appropriately be tried elsewhere. That temptation must be resisted. The plaintiff's choice of forum should normally be respected. The circumstances of this case approach the limits in which a district judge may exercise discretion to transfer to another forum." At 969.

Although the "contacts" a case may have with the jurisdiction in question is an issue, a proper *Gilbert* analysis obligates the court to assess not only the number of contacts but also the comparative efficacy and efficiency of trying a case in one forum as opposed to another. Contacts are relevant to the *forum non conveniens* inquiry only insofar as they relate to the ease and fairness of trying a case in a particular jurisdiction. It will often be easier to "transfer a witness or a document than to transfer a lawsuit." *Id.*

The question to be asked, therefore, is whether it will be so much easier and fairer to try this case in Taiwan than in New York that the balance strongly favors dismissal. After a thorough review of the record we are persuaded that, even allowing wide discretion to the district court, the question must be answered in the negative.

In the first place we do not share the district court's conclusion that "all of the acts specifically complained of occurred in Taiwan." Putting aside Manu's allegations of a New York-orchestrated conspiracy (which nonetheless finds some support in the record) its principal claim is that it was fraudulently induced to part with Chu's identity. The first attempt at this was allegedly made not in Taiwan but in a letter written by Robert Vercamer, then Avon's Director of International Purchasing, from New York on November 17, 1975, to Manu, in Belgium, asking that the address of Manu's supplier be given to Avon, Japan. The alleged false representations made by Dams of AOL to induce Manu to disclose the identity of its representative in Taiwan

were made in London, not Taiwan. Manu's eventual disclosure of the information also had no contact with Taiwan. Manu's fourth claim in its complaint alleges a conspiracy between the three companies involved (Avon, AOL and Arlington), none of which is based in Taiwan. Further, if Manu's claim that the conspiracy was controlled from New York is credited at all, the substance of the controversy itself not only touches other locales besides Taiwan, but has a particular nexus with New York.

Next, the location of the witnesses, always a key factor in *forum non conveniens* cases, does not support the district court's view that the case should be tried in Taiwan rather than New York. It is true that Chu resides in Taiwan, though Manu itself may have to call Chu as a witness if it is to prove its claim. The Taiwanese manufacturers, whose importance is speculative at most, also reside in Taiwan. All the rest of the actors in the drama, however, do not reside in Taiwan.

Bova, the Avon Vice President who met with Chu in Taiwan and was taken to visit manufacturers in Taiwan, is based in New York, where he resides. His testimony is crucial and he was all but ignored by the district court. Kitchener, another important figure, does not live in Taiwan as the district court said, but in Hong Kong. Hong Kong is of course closer to Taiwan than to New York, but Kitchener is an Avon employee. The only obstacle to his presence here is economic and Manu could be made provisionally responsible for this burden. Vercamer, though in New York at the time he wrote the November 17, 1975, letter, apparently now lives in London as does Dams. London is much closer to New York than to Taiwan as of course is Belgium, the residence of all the employees of Manu who would have to testify.

Even without considering the other individuals in New York who are alleged to have been involved in setting up the FEBO and in "controlling" Kitchener's dealings with Chu (in other words, even if we leave out the players in Manu's claimed New York-controlled conspiracy), it will surely be less expensive to bring some mohammeds to the mountain than to proceed the other way around. The cost of flying Kitchener, Chu and perhaps a few Taiwanese manufacturers to New York cannot possibly be more than the cost of flying an equal or greater number of individuals to Taiwan, of hiring Taiwanese counsel to defend and of keeping men like Bova, Dams and Vercamer away from their positions in New York and London. This is not a case where the defendant will be economically prejudiced by having to defend in the plaintiff's chosen forum rather than in another.

The location of witnesses in the plaintiff's chosen forum and of many others in places nearer to that forum than to the alleged more convenient forum, is one of several factual distinctions between this case and *Alcoa III.* In *Alcoa III, none* of the potential witnesses (except conceivably an expert witness) lived in New York, while many did live in Trinidad. *Alcoa III, supra*, at 872. See also, *Schertenleib v. Traum*, 589 F.2d 1156, 1165 (2d Cir. 1978) (Geneva held to be a more convenient forum when "all of the prospective witnesses, apart from [defendant] himself, either are Swiss or reside in European countries"). Further, this is not a situation where the physical location itself or a view of it could figure in the case. Cf., *Alcoa III, supra*, at 869.

Thus, the location of the witnesses is at least as conducive to trial in New York as to trial in Taiwan. Moreover, there are three further factors which demonstrate that Avon has not met and cannot meet its burden of showing the balance of convenience to be strongly in its favor. First, there is the language issue. Chu is apparently able to communicate in English. It may be assumed that the Taiwanese manufacturers do not speak English (though appellant claims otherwise). All of the other individuals whose names have been mentioned as possible witnesses, however, speak English. The documents which have come to light to date are all in English. Thus, the translation problem would appear to be much less serious in New York than in Taiwan.

■ Second, because New York is Avon's *home forum*, this case presents what *Schertenleib* characterized as the "somewhat unusual fact that it is the forum resident who seeks dismissal." *Schertenleib, supra,* 589 F.2d at 1164. Although the residence of the parties is no longer considered dispositive in *forum non conveniens* cases, see, *Alcoa III, supra,* at 869; *Cray v. General Motors,* 389 Mich. 382, 207 N.W.2d 393 (1973) (Michigan residence of *defendant* rejected as bar to *forum non conveniens* dismissal), it remains a significant factor. The court in *Schertenleib* said:

> "We begin by noting that plaintiff chose this forum and defendant resides here. This weighs heavily against dismissal. In this rare case, however, none of the relevant events occurred here and· none of the sources of proof are here." 589 F.2d at 1164.

As outlined above, our case is not similarly rare. It would be odd if not unfair to force the plaintiff, a Belgian who chose this forum, to go to Taiwan at the behest of Avon, who has its own home office right in this forum, when most of the actors involved in the case are not located in Taiwan but in or closer to New York.

Third, the supposedly more convenient forum is in reality no forum at all. Manu represents, and we are inclined to believe, that as a practical matter the district court's ruling will deny it any day in court at all since it is not going to go half way around the world to Taiwan, hire counsel there, and then try, without compulsory process, to get witnesses to go there from England, New York, and Belgium. This circumstance again distinguishes this case from *Alcoa III* where the court specifically said, "there is no suggestion in the record that Trinidad is not an adequate forum." At 871 n.16.

It is almost a perversion of the *forum non conveniens* doctrine to remit a plaintiff, in the name of expediency, to a forum in which, realistically, it will be unable to bring suit when the defendant would not be genuinely prejudiced by having to defend at home in the plaintiff's chosen forum. Here, it will be simpler and no more expensive for Avon to defend in New York than in Taiwan. The only possible prejudice could be the absence of process over the Taiwanese manufacturers. This does not compare with the risk of needless prejudice to the defendant involved in other recent *forum non conveniens* cases in this Circuit. See, *Schertenleib, supra,* 589 F.2d at 1165 (inability to bring crucial witnesses, incarcerated in Switzerland, to New York for live cross-examination would produce a "very serious handicap" to defendant if New York jurisdiction retained); *Fitzgerald v. Texaco, Inc., supra,* 521 F.2d at 453 (inability to implead other parties directly involved is part of the "clear prejudice which defendants would suffer if jurisdiction were retained").

Our discussion so far has dealt with the "private interest" factors which point clearly towards retention of jurisdiction in New York, the plaintiff's chosen forum, as the most convenient and expeditious forum and, indeed, the only one where plaintiff may realistically obtain justice. Turning to the "public interest" aspect of the *Gilbert* analysis, the Taiwan contacts in this case have little or no significance. Although the district court saw little local interest in having this case decided in New York, Taiwan has no greater interest. Neither of the parties is from Taiwan and none of the Taiwanese individuals involved seems to be complaining of anything. In truth, neither proposed forum has a particular affirmative public interest in this case of the type contemplated by *Gilbert* ("there is a local interest in having localized controversies decided at home," 330 U.S. at 509, 67 S.Ct. 843) and both forums would be burdened by the addition of the case to their dockets.

■ One effect of the contacts with Taiwan will be to cause Taiwanese substantive law to be applied to some of the issues in the case. The district court relied heavily on this fact and it is relevant. But "the need to apply foreign law is not in itself a reason to apply the doctrine of *forum non conveniens," Olympic Corporation v. Societe Generale,* 462 F.2d 376, 379 (2d Cir. 1972),

and we must guard against an excessive reluctance to undertake the task of deciding foreign law, a chore federal courts must often perform. See, *Ciprari v. Servicos Aereos Cruzeiro do Sul, S.A.*, 232 F.Supp. 433, 443 (S.D.N.Y.1964); *Mobil Tankers Co. v. Mene Grande Oil Co.*, 363 F.2d 611, 615 (3d Cir.), *cert. denied*, 385 U.S. 945, 87 S.Ct. 318, 17 L.Ed.2d 225 (1966). Proof of foreign law may be a burden in this case, but it is not alone enough to push the balance of convenience strongly in favor of the defendant. The other *forum non conveniens* factors must do that, but our foregoing analysis of them shows that in fact they do just the opposite.

The doctrine of *forum non conveniens* is intended to avoid trial in inappropriate forums, not to avoid meritless suits. If this is such a suit, Avon can be protected by the trial judge's using his discretionary powers to force Manu, if it wants the testimony of Avon overseas representatives, to advance the expenses of bringing them here or counsel fees for taking their depositions abroad. Unless Manu can prove an exclusive dealing contract with Chu and that Avon induced breach, much of Manu's action may be dismissible on motion for summary judgment. But the *forum non conveniens* route, appealing as it is to busy trial judges, is not the proper way to go about this.

The judgment of the district court is reversed.

VAN GRAAFEILAND, Circuit Judge:

Because I continue to believe that *Alcoa Steamship Co. v. M/V Nordic Regent*, 636 F.2d 860 (2d Cir. 1980) was wrongly decided, I am pleased that my colleagues are able to distinguish it. Unless other courts follow this lead, *forum non conveniens* bids fair to become a procedural ploy designed to discomfit rather than an instrument for the furtherance of justice.

I concur in the result.