SIGMUND MILLER, TEMPORARY ADMINISTRATOR
(ESTATES OF MOHAMED ABDUL-SAMED DIGHIDI
AND GAMEL AL-MOGHRABY HASSAN) *v.* UNITED
TECHNOLOGIES CORPORATION ET AL.

SUPERIOR COURT     JUDICIAL DISTRICT OF     FILE NO. 221788
                FAIRFIELD AT BRIDGEPORT

Memorandum filed August 22, 1986

*Koskoff, Koskoff & Bieder,* for the plaintiff.

*Howard, Kohn, Sprague & Fitzgerald,* for the named defendant.

*Wiggin & Dana,* for the defendant General Dynamics Corporation.

*Bai, Pollack & Dunnigan,* for the defendant Chandler Evans, Inc.

JACOBSON, J. The plaintiff, Sigmund Miller, temporary administrator of the estates of Mohamed Abdul-Samed Dighidi and Gamel Al-Moghraby Hassan, commenced this product liability action on January 19, 1985. The plaintiff's decedents were killed on January 20, 1983, when their American made F-16 jet fighter

crashed in Egypt. The decedents were members of the Egyptian Air Force. The plane was owned by the Egyptian government.

The defendant General Dynamics Corporation, a Delaware corporation with its headquarters in St. Louis, Missouri, designed and assembled the F-16. The F-16 was assembled by General Dynamics in Fort Worth, Texas. The defendant United Technologies Corporation, a Delaware corporation with its principal place of business in Connecticut, designed and manufactured the F-16's engine in Connecticut. The defendant Chandler Evans, Inc., designed and manufactured the F-16's fuel pump in Connecticut.

The plaintiff was appointed temporary administrator of the estates by the Probate Court for the district of Bridgeport on January 18, 1985. This action was commenced on January 19, 1985, one day before the running of the wrongful death statute of limitations. General Statutes § 52-555. Since that time, the plaintiff has been appointed permanent administrator of the estates and has instituted a similar action in his capacity as permanent administrator. The plaintiff has suggested that the court consolidate the two actions.

This case is presently before the court on the defendants' motion to dismiss. The defendants argue first that the wrongful death statute permits only a permanent administrator and not a temporary administrator to bring such an action. This was addressed in an earlier memorandum and for the reasons set forth therein this is not a ground upon which to grant the motion to dismiss.

The defendants also argue that this action should be dismissed on the basis of forum non conveniens. An evidentiary hearing was held on July 21, 1986, on the forum non conveniens issue, specifically whether Egypt

would provide an adequate alternative forum. This memorandum will address the forum non conveniens issue raised in the motion to dismiss.

The motion to dismiss shall be used to assert, inter alia, lack of jurisdiction over the subject matter. Practice Book § 145. " 'Whenever the absence of jurisdiction is brought to the notice of the court or tribunal, cognizance of it must be taken and the matter passed upon before it "can move one further step in the cause; as any movement is necessarily the exercise of jurisdiction." ' " *Baldwin Piano & Organ Co.* v. *Blake,* 186 Conn. 295, 297, 441 A.2d 183 (1982).

"The common law principle of forum non conveniens provides that a court 'may resist *imposition* upon its jurisdiction' even when it has jurisdiction." (Emphasis in original.) *Brown* v. *Brown,* 195 Conn. 98, 108, 486 A.2d 1116 (1985). "The principle of *forum non conveniens* permits a court to decline jurisdiction even though venue and jurisdiction are proper, on the theory that for the convenience of the litigants and the witnesses, the action should be tried in another judicial forum." *Dahl* v. *United Technologies Corporation,* 632 F.2d 1027, 1029 (3d Cir. 1980).

The doctrine of forum non conveniens has been applied in Connecticut. *Alexander* v. *United Technologies Corporation,* Superior Court, judicial district of Hartford-New Britain at New Britain, Docket Nos. 409409, 409410 (July 15, 1983). "[A] plaintiff's choice of forum should rarely be disturbed. However, when an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would 'establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems,' the court may, in the exercise

of its sound discretion, dismiss the case." *Piper Aircraft Co.* v. *Reyno,* 454 U.S. 235, 241, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981), reh. denied, 455 U.S. 928, 102 S. Ct. 1296, 71 L. Ed. 2d 474 (1982).

The ultimate inquiry on whether the common law doctrine of forum non conveniens should be applied is where trial will best serve the convenience of the parties and the ends of justice. *Brown* v. *Brown,* supra, 108 n.17, citing *Koster* v. *(American) Lumbermens Mutual Casualty Co.,* 330 U.S. 518, 527, 67 S. Ct. 828, 91 L. Ed. 1067 (1947).

"Whether an action may be dismissed for *forum non conveniens* when jurisdiction is otherwise properly invoked is governed by the factors outlined in *Gulf Oil Corp.* v. *Gilbert,* 330 U.S. 501, 508–509, 67 S. Ct. 839, 843, 91 L. Ed. 1055 (1947)." *Manu International, S. A.* v. *Avon Products, Inc.,* 641 F.2d 62, 64 (2d Cir. 1981).

The court should proceed in four steps: (1) The court should determine if an adequate alternative forum exists which possesses jurisdiction over the whole case. (2) The court should consider all relevant factors of private interest with a strong presumption against disturbing the plaintiffs' initial forum choice. (3) If the balance of private interest factors is equal, then the court should consider if any public interest tips the balance toward the foreign forum. (4) If the public interest does tip toward the foreign forum, then the court must make sure the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice. *Pain* v. *United Technologies Corporation,* 637 F.2d 775, 784–85 (D.C. Cir. 1980).

Unless the balance is strongly in favor of the defendants, the plaintiff's choice of forum should rarely be disturbed. *Gulf Oil Corporation* v. *Gilbert,* supra, 508; *Manu International, S. A.* v. *Avon Products, Inc.,* supra, 65. The forum non conveniens principle remains

discretionary; *Brown* v. *Brown,* supra, 109; and if a court properly analyzes the factors above, its forum non conveniens decision will not be reversed unless an abuse of discretion is found. *Manu International, S. A.* v. *Avon Products, Inc.,* supra.

"At the outset of any *forum non conveniens* inquiry, the court must determine whether there exists an alternative forum." *Piper Aircraft Co.* v. *Reyno,* supra, 254 n.22; *In re Union Carbide Corporation Gas Plant Disaster at Bhopal, India,* 634 F. Sup. 842, 845 (S.D.N.Y. 1986) (*Bhopal*). First the defendant must be amenable to process in the other jurisdiction. *Piper Aircraft Co.* v. *Reyno,* supra; *Bhopal,* supra. Ordinarily, if a defendant is amenable to process, then the court can end its inquiry and make a finding that there is an adequate alternative forum. *Bhopal,* supra, 846–47. The court may, however, review the substantive and procedural differences between the two forums. *Piper Aircraft Co.* v. *Reyno,* supra, 250; *Bhopal,* supra, 846. The court should not go so far as to consider the impact of the putative transferee forum's law on the plaintiff in its decision. *Piper Aircraft Co.* v. *Reyno,* supra; *Bhopal,* supra. "At the point, however, where the possible change in law would provide 'no remedy at all' to plaintiff, a court may conclude that no adequate alternative exists." *Bhopal,* supra. Thus, while it is not a major factor in the analysis, a court should at least consider the effect on the plaintiff of a change in law upon transfer. *Bhopal,* supra, 846–47.

In the present case, a hearing was held on July 21, 1986, to determine whether Egypt was an adequate alternative forum. The defendants General Dynamics and United Technologies have agreed: (1) to submit to the jurisdiction of Egypt; (2) to make their personnel and records available; (3) to waive any applicable statute of limitations; (4) to satisfy any judgment against them; and (5) not to object to reopening this action in

Connecticut if these conditions are not met. Thus, two of the three defendants are definitely amenable to process in Egypt. See *Bhopal,* supra, 847.

The third defendant, Chandler Evans, also seeks dismissal based on forum non conveniens, thus indicating a willingness to submit to the jurisdiction of the Egyptian courts. This court can base its granting of the motion to dismiss on an agreement by the defendants to submit to the jurisdiction of the Egyptian courts. See *Bhopal,* supra, 852.

Additionally, Egypt has jurisdiction as a matter of right. Under article 30, paragraph 2 of the Egyptian Civil and Commercial Code, the "Courts of the Republic shall have jurisdiction to decide actions against a foreigner who does not maintain residence or domicile in the Republic in the following events . . . (2) If the action arose from a property located in the Republic or from an obligation that was created, performed, or should have been performed therein or from a bankruptcy filed therein." Pursuant to article 30, jurisdiction is a matter of right and therefore the Egyptian court would not need the defendants' consent.

The second part of the inquiry is whether Egypt would provide any remedy at all and to what extent it would change the parties' positions.

Article 163 of the Egyptian Code of Civil Procedure provides for recovery of tort liability where the actor caused the wrongful act and the injury is a result of that act. Moreover, under articles 221 and 222 of the Egyptian Civil Code, the Egyptian courts may award damages for loss suffered, lost profits, moral loss and damages for pain and suffering to the immediate family of the decedent. Obviously, the plaintiff would have a remedy in the Egyptian courts.

The plaintiff also argues that there are no juries in civil cases in Egypt and no contingency fees. Lack of juries in civil cases is a common feature in many civil law jurisdictions and lack of contingency fees is not an insurmountable barrier to filing claims abroad. *Bhopal,* supra, 851. Neither of these arguments makes a forum inadequate where a remedy is still available. Id.

Accordingly, Egypt is an adequate alternative forum.

When there is an adequate alternative forum, the inquiry next turns to a weighing of the private interest factors. *Bhopal,* supra, 852. The private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses; (3) the possibility of viewing the accident scene if such viewing is appropriate to the action; (4) the enforceability of a judgment; (5) the relative advantages and obstacles to fair trial; and (6) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Pain* v. *United Technologies Corporation,* supra, 782; *Dahl* v. *United Technologies Corporation,* supra, 1030, citing *Gulf Oil Corporation* v. *Gilbert,* supra, 507–509. The private interests concern the practical problems that make trial of a case easy, expeditious and inexpensive and the likelihood of obtaining an enforceable judgment and the relative advantages and obstacles to a fair trial. *Manu International, S. A.* v. *Avon Products, Inc.,* supra, 64. The list in *Gilbert* is not set in stone and is not to be rigidly applied; rather, each case turns on its facts. *Piper Aircraft Co.* v. *Reyno,* supra, 249–50; *Bhopal,* supra.

The first private interest factor is the relative ease of access to sources of proof. All documents relating to the design, manufacture and sale of the fuel pump are located in Connecticut. All documents relating to

the manufacture, design, testing and sale of the F-16 are in Texas. All records pertaining to the manufacture and design of the F-16 engine are in Connecticut. The hot gas line from the crew escape system is in Texas. The fuel pump is in Connecticut. A recording of the in-flight recorder is in Texas. All General Dynamics' documents relating to the crash are in Texas. Statements of General Dynamics employees who inspected the wreckage are in Connecticut.

The remaining wreckage is under the control of the Egyptian government, but its whereabouts is unknown. Training and qualifications records of the flight crew are in Egypt. The maintenance and operational records of the F-16 are in Egypt.

The above facts establish that the relevant evidence and documentation in this case is scattered throughout the United States and Egypt. The crucial evidence in this products liability case, the documentation relating to, among other things, the fuel pump, as well as the design and manufacture of the F-16 is, however, located in the United States and is written in English. The cost of translating all of these high-technology documents into Arabic or French would outweigh the cost of translating the Egyptian documents into English. Additionally, there is a presumption favoring the plaintiff's chosen forum and the defendants have not overcome that presumption at this time.

The second private interest factor is the location of the witnesses. All of the defendants' personnel involved in the design, manufacture, production and testing of the F-16 and its component parts are in the United States. The defendants' employees moved the wreckage from the crash site, aided the Egyptian government in its investigation and inspected the wreckage and in-flight recorder. The Egyptian government conducted an investigation of the accident. The plaintiff

also contends that the only eyewitnesses were members of the American military who are now back in the United States. Additionally, most if not all expert witnesses would be American since Egypt has no domestic aircraft industry and since it was an American built plane that crashed. Thus, most of the witnesses relevant to this action are in the United States. Therefore, this private interest factor favors the Connecticut courts.

The third private interest factor is the possibility of viewing the accident scene. Clearly, Egypt is the better choice for this purpose. This consideration, however, is minor. In a products liability case, videotapes, pictures, diagrams, schematics and models are more instructive than an actual view. *Bhopal,* supra, 860.

The fourth private interest factor is the enforceability of a judgment. Where the Egyptian plaintiff prefers the American courts and the American defendants prefer the Egyptian courts, the court can view these preferences as a willingness to abide by a judgment of the foreign court. *Bhopal,* supra, 852.

Finally, the court should review the relative advantages and obstacles to a fair trial and all other practical problems that make trial of a case easy, expeditious and inexpensive. Specifically, in the present case, the parties argue about the safety of Americans in Egypt. There is a dispute as to how dangerous it would be for Americans to be in Egypt on a trial of this nature. Although the alleged danger does not rise to the level of making Egypt an inadequate forum, it does indicate a preference toward Connecticut.

Accordingly, the private interest factors weigh in favor of retaining jurisdiction in Connecticut. At the very least, the defendants have not overcome the presumption in favor of the plaintiff's choice of forum.

In addition to the private interests of the litigants, the court should also consider the public interests. The public interest factors include: (1) administrative difficulties for the courts, i.e., court congestion and the court's familiarity with the applicable law; (2) imposing the burden of jury duty on people of a community with no relation to the litigation; (3) holding trial in the view of interested persons; and (4) having matters decided in their local forum. *Manu International, S. A.* v. *Avon Products, Inc.,* supra, 64–65; *Pain* v. *United Technologies Corporation,* supra, 728; *Dahl* v. *United Technologies Corporation,* supra, 1030, citing *Gulf Oil Corporation* v. *Gilbert,* supra, 508.

Neither party offered any evidence as to the congestion of either court system. It does appear that Egyptian law would be the applicable law regardless of the forum. Under article 21 of the Egyptian Code of Civil Procedure, the law of the place of the accident would apply. Furthermore, under Connecticut conflicts of law, the doctrine of lex loci delicti requires that the law of the place of the accident would govern the substantive issues of the case. *Gibson* v. *Fullin,* 172 Conn. 407, 411, 374 A.2d 1061 (1977). Furthermore, the place of the injury and not the place of manufacture determines the choice of law. *DeFourneaux* v. *Sturm, Ruger & Co.,* 503 F. Sup. 2, 4 (D. Conn. 1980); *K-Mart Corporation* v. *Midcon Realty of Connecticut, Ltd.,* 489 F. Sup. 813, 815 (D. Conn. 1980). This factor favors the Egyptian courts.

The remaining public interest factors pertain to having issues decided in their local forum in front of interested persons. The decedents and their families were all residents and citizens of Egypt. The F-16 was owned by the Egyptian Air Force. The only interest a Connecticut court would have is in seeing that its products are designed and manufactured properly. Such an interest is not elevated to the same importance as Egypt's

interest. See *Bhopal,* supra, 862–65. Accordingly, the public interest factors weigh in favor of removing this action to Egypt.

In conclusion, although Egypt would provide an adequate alternative forum and the public interests favor Egypt, the more important interests favor the Connecticut courts. There is a presumption in favor of the plaintiff's choice of the forum. Unless the balance is strongly in favor of the defendants, the plaintiff's choice should rarely be disturbed. *Gulf Oil Corporation* v. *Gilbert,* supra, 508; *Manu International, S. A.* v. *Avon Products, Inc.,* supra, 65.

Accordingly, the defendants' motion to dismiss is denied.