**HATZLACHH SUPPLY INC., Plaintiff,**

v.

**SAVANNAH BANK OF NIGERIA, Defendant.**

**No. 84 Civ. 5127 (CHT).**

United States District Court, S.D. New York.

Dec. 9, 1986.

Frenkel & Hershkowitz, P.C., New York City, for plaintiff; Mark J. Kurzmann, of counsel.

Kramer, Levin, Nessen, Kamin & Frankel, New York City, for defendant; Geoffrey M. Kalmus, Sigmund Wissner-Gross, John Chapman, of counsel.

TENNEY, District Judge.

This matter is before the Court on defendant's motion to dismiss the complaint. Plaintiff, Hatzlachh Supply Inc., is a New York corporation involved in the import-export business. Defendant, Savannah Bank, is a Nigerian bank existing under the laws of Nigeria. Plaintiff alleges that it forwarded bills of lading to defendant with specific instructions not to transfer the documents until a Nigerian purchaser remitted the purchase price and that plaintiff transported the goods but was never paid. Plaintiff alleges that the defendant released the documents without being paid or was paid and converted the money or negligently mishandled the documents. Plaintiff then instituted litigation to recover the value of the goods.

Defendant moves for an order dismissing the case because of a lack of both subject matter and personal jurisdiction and alternatively under the doctrine of forum non conveniens.

For the reasons set out below, defendant's motion is denied on all three grounds.

## BACKGROUND

In 1981 the plaintiff agreed to sell to a Nigerian importer, Difson Ltd., nearly $1.3 million worth of photographic supplies. The importer, in order to avoid violating Nigeria's strict foreign currency regulations, selected defendant, a government owned bank, to submit a specialized currency form (Form M). This form is widely used in Nigeria as it permits Nigerian buyers to transfer money to foreign suppliers of goods. The form is designed to work as follows: A Nigerian buyer obtains the services of a local Nigerian bank. Together they fill out Form M and the bank submits it to the Central Bank of Nigeria. When the goods are received in Nigeria they are subject to government inspection. If the

government approves of the shipment, the Central Bank will allow the local bank to transfer the foreign currency to the seller.

Plaintiff exported the goods but did not receive any money. Defendant wrote to plaintiff's bank claiming Difson refused to pay unless the drafts were changed. Defendant subsequently communicated its desire to be paid for the collection services allegedly rendered. The final communication from defendant states that the documents forwarded to defendant "were intercepted by unknown elements who cannot be located."[1] The communications sent by the defendant were on stationery with the heading "SAVANNAH BANK OF NIGERIA LTD." Immediately beneath that heading is the following legend: "AFFILIATED WITH BANK OF AMERICA NT & S.A." It appears that the Bank of America National Trust and Savings Association owns 30 percent of the shares of defendant's stock.[2] On the bottom of the stationery there is a listing of the bank's board of directors. Three out of the ten named directors are labeled as "(U.S. Citizen[s])." Defendant has repeatedly held Board of Directors meetings in the United States and also sends its agents traveling to the United States to meet with its correspondent banks.

## DISCUSSION

### A. JURISDICTION

Subject matter jurisdiction over the case at bar is governed by the Foreign Sovereign Immunities Act ("F.S.I.A."). This statute provides that subject to international agreements to which the United States is a party, a foreign state is immune to suit in both federal and state courts. 28 U.S.C. § 1604 (Supp.1986). However, 28 U.S.C. § 1605 provides for various exceptions to the general grant of immunity. If the ac-

---

1. Defendant alleges that it subsequently communicated further with plaintiff's bank. See Declaration of Peter R.W. Gamblin, Executive Director of the defendant bank, dated May 21, 1985 (hereinafter referred to as "Gamblin Dec."), at 10. However, defendant has not provided the Court with any evidence of these communications.

2. Defendant states that the government of Nigeria owns 51.3% of the outstanding shares, 30% are owned by the Bank of America, and 18.7% by the Nigerian public. Gamblin Dec. at 4.

tion in this case falls within one of the statute's exceptions, the Court has subject matter jurisdiction. If service of process is sufficient, the Court also may exercise personal jurisdiction. 28 U.S.C. § 1330. If the defendant does not protest service of process, it is presumed to be adequate. *Texas Trading & Milling Corp. v. Federal Republic of Nigeria*, 647 F.2d 300, 313 (2d Cir.1981), *cert. denied*, 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982); *Crimson Semiconductor, Inc. v. Electronum*, 629 F.Supp. 903, 907 (S.D.N.Y.1986); *Chisholm & Co. v. Bank of Jamaica*, 643 F.Supp. 1393, 1402 (S.D.Fla.1986). As a final aspect to the personal jurisdiction inquiry, the court must determine whether the defendant has sufficient contact with the forum so as not to offend due process of law. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *Texas Trading*, 647 F.2d at 313–15.

## 1. SUBJECT MATTER JURISDICTION

■ Defendant claims it is immune from suit as a result of the F.S.I.A. Defendant argues that it is an instrumentality of the Nigerian government since the government owns a majority of the shares of the defendant's stock. In addition, defendant asserts that the activity in question was not commercial and took place entirely outside the United States. However, even if the bank is majority owned by the government and the alleged activity transpired entirely outside the United States, the F.S.I.A. cannot be used to evade jurisdiction in the case at bar. The F.S.I.A. declares that a foreign state is not immune from jurisdiction in any case in which the foreign state conducts "an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2). This subsection vests the court with subject matter jurisdiction if the action (1) concerns a commercial activity, and (2) causes a direct effect in the United States. Defendant professes that its only activity was to adhere to the Nigerian govern-

ment's currency regulations and that this activity was therefore not commercial. However, 28 U.S.C. § 1603(d) states that it is the nature of the action rather than its purpose which is the determinative factor. "[I]t is a normal commercial function to act for another in collecting and holding funds...." *Transamerican Steamship Corp. v. Somali Democratic Republic*, 767 F.2d 998, 1003 (D.C.Cir.1985). *See also Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1109–10 (5th Cir.1985) (Mexican national bank's sale of certificates of deposit held commercial in nature although goal was to comply with government regulations.). "A contract, implied or otherwise, is inherently commercial, even when the ultimate purpose behind it is government regulation." *Chisholm*, 643 F.Supp. at 1400. Furthermore, the legislative history of the F.S.I.A. indicates that the drafters intended that the activity in the present case would be considered commercial. The drafters mention as examples of commercial activity "import-export transactions involving sales to or purchases from concerns in the United States." H.Rep. No. 94–1487, 94th Cong., 2d Sess. 17, *reprinted in* 1976 U.S. Code Cong. & Ad.News 6604, 6615. Moreover, defendant acknowledges that it requested plaintiff's bank to remit a payment for its alleged services. *See* Exhibit 4b attached to Declaration of Morris Broker, President of the plaintiff corporation, dated November 11, 1985 (hereinafter referred to as "Broker Dec."). This activity is clearly commercial in nature.

To determine if there is a direct effect in the United States, the relevant inquiry "is whether the corporation has suffered a 'direct' financial loss." *Texas Trading*, 647 F.2d at 312. This circuit has made several pronouncements to clarify the exact nature of this inquiry. In *Carey v. National Oil Corp.*, 592 F.2d 673 (2d Cir.1979), the court indicated that a breach of contract as well as a tort can cause a direct effect. In *Schmidt v. Polish People's Republic*, 579 F.Supp. 23, 27 (S.D.N.Y.), *aff'd*, 742 F.2d 67 (2d Cir.1984), the court decided that when a United States corporation was the benefi-

ciary of a contract made payable and negotiated in the United States, breach of that contract caused a direct effect. In the case at bar, plaintiff was not paid. Plaintiff's loss of over $1 million clearly satisfies the direct effect requirement.

## 2. PERSONAL JURISDICTION

■ The next step is to decide whether the defendant's contacts with the forum are sufficient to satisfy the requirement of due process. In *Texas Trading*, the court set forth four factors to be appraised in ascertaining the adequacy of the contacts with the forum: "[1] the extent to which defendants availed themselves of the privileges of American law, [2] the extent to which litigation in the United States would be foreseeable to them, [3] the inconvenience to defendants of litigating in the United States, and [4] the countervailing interests of the United States in hearing the suit." 647 F.2d at 314.

### (a) *The extent to which defendant availed itself of the privileges of American law*

The defendant maintains bank accounts in the United States. Gamblin Dec. at 8. These act as a conduit for receiving and disbursing payments and are therefore protected by United States laws governing the banking and insurance industries. Defendant is sheltered by New York law when it instructs plaintiff's bank to pay bills or store cash. *Id.* To this extent, the defendant has availed itself of the privileges of American law.

### (b) *The extent to which litigation in the United States would be foreseeable*

Where a defendant negotiates or obtains the services of a plaintiff through the use of the United States mail and phone system and agrees to pay in the United States, litigation in the United States has been held to be foreseeable. *Gilson v. Republic of Ireland*, 682 F.2d 1022, 1028 (D.C.Cir.1982); *Chisholm*, 643 F.Supp. at 1402; *Meadows v. Dominican Republic*, 628 F.Supp. 599, 607 (N.D.Cal.1986); *See also Schmidt*, 579 F.Supp. at 28 (contacts held sufficient where negotiations took place in United States and notes payable in United States dollars). Defendant acknowledges that it used the mail and telex systems in prior dealings with the plaintiff. Gamblin Dec. at 8. Taking into account these prior dealings, defendant's consent to pay in the United States, and its representation of a link with the Bank of America, the Court holds that litigation in the United States must have been foreseeable to defendant.

### (c) *The inconvenience to defendant of litigating in the United States*

Defendant contends that litigating in the United States will be inconvenient. However, "[a]lthough the United States is certainly distant from Nigeria, litigation here is not unduly inconvenient for defendant...." *Texas Trading*, 647 F.2d at 315. Defendant admits that meetings of its Board of Directors take place in the United States. Gamblin Dec. at 21. Defendant also concedes that its representatives make periodic visits to defendant's correspondent banks. Gamblin Dec. at 22. Moreover, the probable emphasis on documentary proof in this action makes it highly unlikely that defendant will need to transport many witnesses. *G.B.C. Nigeria (LTD.) v. M.V. Sophia First*, 588 F.Supp. 76, 80 (S.D.N.Y. 1984).

### (d) *The countervailing interests of the United States in hearing the suit*

The interest of the United States in furnishing a forum for this litigation is demonstrated by the enactment of the F.S.I.A. itself. *Crimson*, 629 F.Supp. at 908. Furthermore, the plaintiff certainly has an "interest in obtaining convenient and effective relief...." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980).

Therefore, this court has jurisdiction over the defendant. Accordingly, defendant's motion to dismiss for lack of personal jurisdiction is denied.

## B. FORUM NON CONVENIENS

■ Defendant argues that this Court should dismiss the case because of the doctrine of forum non conveniens, on the grounds that litigating in the Southern District of New York is inconvenient for it and that this matter should be handled in Nigeria. Plaintiff contends that Nigeria does not provide an adequate forum due to purported corruption and unhealthy living conditions. Broker Dec. at 13, 14. Plaintiff offers a State Department Nigerian travel advisory which recommends vaccinations for malaria, typhoid and meningitis. Exhibit 6 to Broker Dec. Plaintiff also submits a transcript of a television broadcast which describes Lagos, Nigeria's capital, as filthy, contaminated, lawless, and corrupt. Exhibit 8 to Broker Dec. Furthermore, plaintiff claims that even if the company were to litigate in Nigeria and win, it would not be able to take the award out of the country because of Nigeria's foreign currency regulations. The State Department travel advisory declares that only 20 Naira (Nigeria's basic currency unit) may be removed from Nigeria. Exhibit 6 to Broker Dec.

In deciding whether to grant defendant's motion, the initial inquiry is to ascertain if there is an adequate alternate forum. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507–08, 67 S.Ct. 839, 942–43, 91 L.Ed. 1055 (1947). Defendant has failed to demonstrate that this Court should dismiss the case at bar on forum non conveniens grounds. Defendant presents an affidavit which voices the opinion that Nigeria is a "fair forum," *see* Affidavit of Akinloye Adejare Sanda, a Nigerian Barrister, dated January 10, 1986 (hereinafter referred to as "Sanda Aff."), at 9, 34, and that if plaintiff wins he can "apply" to the proper authorities to take out his award. Sanda Aff. at 27. It is not guaranteed that if plaintiff wins, he can circumvent Nigeria's strict currency controls. Moreover, defendant states that under Nigerian law plaintiff has until 1987 to start an action in Nigeria. *See* Gamblin Supplemental Declaration dated January 27, 1986 (hereinafter referred to as "Gamblin Supp. Dec."), at

26. It is unclear from the declaration if the relevant law bars suit at the commencement of 1987 or at a later date. Since defendant has not been precise, it would be unfair to force plaintiff into preparing for litigation in Nigeria in such a limited time frame.

However, even if defendant did in fact prove that Nigeria can provide an adequate alternate forum, the inquiry is not over. The Supreme Court in *Gulf*, 330 U.S. at 508–09, 67 S.Ct. at 843, enunciated a variety of factors to be weighed in determining whether a suit should be dismissed under the doctrine of forum non conveniens. The first group of factors related to the private interests of the litigants, includes: (1) accessibility to sources of proof, (2) availability of compulsory process to obtain the testimony of recalcitrant witnesses, (3) cost of bringing witnesses to the forum, and (4) overall possibility of obtaining a fair trial. The factors related to the public interest include: (1) the amount of litigation already in the court, (2) the unfairness of submitting foreign-based controversies to local juries, and (3) the burden of applying foreign law in the forum.

The private interest factors do not point to Nigeria as the proper forum for the instant action. Defendant claims that all of its witnesses are in Nigeria and argues that it is important for them to remain there to conduct the business. However, it has been held that this is not a consideration in the forum non conveniens inquiry. *Crimson*, 629 F.Supp. at 909. Furthermore, defendant has not provided the court with a list of the names and addresses of the witnesses it anticipates calling to testify at trial. A party moving to dismiss a case on witness-related forum non conveniens grounds is required to provide such a list. *Ocean Shelf Trading Inc. v. Flota Mercante Grancolombiana S.A,*, 638 F.Supp. 249, 251 n. 4 (S.D.N.Y.1986). Moreover, even if defendant does present such a list, it has not shown why the testimony of these witnesses could not be obtained in the form of depositions or letters rogatory, or why easily transportable docu-

mentary proof cannot be sent here. *G.B.C. Nigeria*, 588 F.Supp. at 80. In addition, defendant has offered no evidence that litigation in this matter has been instituted in Nigeria. Therefore, dismissing the case will not avoid duplicative litigation.

The public interest factors also point to the conclusion that this action should be litigated in the United States. Although according to New York's choice of law rules this Court may invoke Nigerian law, this does not justify an automatic dismissal under the doctrine of forum non conveniens. "[W]e must guard against an excessive reluctance to undertake the task of deciding foreign law, a chore federal courts must often perform." *Manu International, S.A. v. Avon Products, Inc.*, 641 F.2d 62, 68 (2d Cir.1981); *G.B.C. Nigeria*, 588 F.Supp. at 80.

In terms of court congestion, it is true that the Southern District of New York is a very busy jurisdiction but this is only one factor and when balanced against the other public and private interests is not persuasive.

In addition, the Court will not be forced to submit the controversy to a local jury since the case at bar would be a non-jury trial.

In sum, defendant fails to show why the Court should ignore the Supreme Court's statement that "the plaintiff's choice of forum should rarely be disturbed." *Gilbert*, 330 U.S. at 508, 67 S.Ct. at 843.

## CONCLUSION

This Court can exercise both subject matter and personal jurisdiction over defendant. Although it is a foreign entity, the defendant falls within the exceptions of the F.S.I.A. In addition, jurisdiction over defendant does not offend due process. Finally, defendant fails to show why this Court should evict the plaintiff from his home forum.

Accordingly, for the reasons set out above, the defendant's motion to dismiss for lack of both subject matter and person-al jurisdiction and alternatively under the doctrine of forum non conveniens is denied.

So ordered.