**MUTUAL EXPORT CORPORATION, Plaintiff,**

v.

**WESTPAC BANKING CORPORATION, Defendant.**

**No. 90 Civ. 1479 (WK).**

United States District Court, S.D. New York.

Aug. 3, 1990.

Daniel A. Ross, Sharfman, Shanman, Poret & Siviglia, P.C., New York City, for plaintiff.

Edwin G. Schallert, Debevoise & Plimpton, New York City, for defendant.

MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

This action arises out of a dispute over the termination date of a letter of credit issued by defendant Westpac Banking Corporation ("Westpac") in favor of plaintiff Mutual Export Corporation ("Mutual"). Westpac moves to dismiss under the doctrine of *forum non conveniens.* For reasons which follow, the motion is denied.

---

## BACKGROUND

Plaintiff Mutual, a Delaware corporation with its principal place of business in Roseland, New Jersey, is engaged in the business of chartering cargo ships in international trade. It is a wholly-owned subsidiary of Reefer Express Lines Pty, Limited ("Reefer"), a Bermuda corporation which likewise has its principal place of business in Roseland, New Jersey. Plaintiff shares its office space with Reefer, and because it has no employees of its own, it, for a fee, utilizes the services of Reefer's employees, most of whom are residents of New Jersey or New York.

In 1985, Reefer decided to sell another of its wholly-owned subsidiaries, New Guinea Express Lines (A/Asia) Pty, Ltd. ("New Guinea Express"),[1] to, *inter alia*, members of New Guinea Express's management. New Guinea Express, an Australian corporation based in Sydney, Australia, operated a shipping service between ports in Australia and New Guinea. It had entered into certain charter agreements with the plaintiff, whereby New Guinea Express subchartered two of plaintiff's vessels. Since the two companies no longer would be commonly owned by Reefer, the transaction transferring ownership of New Guinea Express required that a letter of credit or similar bank guarantee be issued to secure some of the charter party payments owed to plaintiff by New Guinea Express.

Defendant Westpac, an Australian corporation, is the bank from which New Guinea Express sought and ultimately obtained the letter of credit for the benefit of plaintiff. Headquartered in Sydney, defendant maintains branch offices in more than a dozen countries. One such branch occupies three floors of an office building in midtown Manhattan.

On July 5, 1985, after its employees in Australia had reviewed and approved New Guinea Express's request, defendant issued a $500,000 standby letter of credit in favor of plaintiff. New Guinea Express contemporaneously agreed to indemnify defendant for any claims arising out of the letter of credit, which, according to its terms, was to expire on June 30, 1986.

In December 1988, New Guinea Express defaulted on the charter payments it owed plaintiff. Unable to obtain payments from New Guinea Express, which had sought protection under Australia's bankruptcy laws, plaintiff looked to the letter of credit. Thus, on October 3, 1989, it requested payment of $500,000 from defendant. Defendant refused to pay, pointing to the fact that the express terms of the letter of credit provided for its expiration on June 30, 1986.

Two months later, plaintiff wrote to defendant, asserting its position that the expiration date appearing on the letter of credit was an error, and requesting that defendant extend the letter of credit to its originally intended date, July 13, 1992. The following day plaintiff presented a sight draft at defendant's New York City branch. Defendant again refused to pay, and plaintiff commenced this action.

The complaint sets forth three claims: breach of contract, reformation, and estoppel. Plaintiff asserts that June 20, 1986 was not the expiration date upon which the parties previously had agreed. It bases this contention in part on a draft of the letter of credit sent to it by New Guinea Express on June 28, 1985. The draft stated that the letter of credit was to expire "45 days after the later of the last possible day on which [either of the ships' charters] may terminate." According to plaintiff, this language contemplated an expiration date of July 13, 1992.

Plaintiff also contends that two letters from defendant to New Guinea Express, written in 1987 and 1988, long after the claimed 1986 expiration date, evidence the continued existence of the $500,000 guarantee in favor of plaintiff. Plaintiff further alleges that, but for defendant's agreement to issue a letter of credit that would expire

---

**1.** In 1985, New Guinea Express was called Refrigerated Express Lines (A/Asia) Pty, Limited. During the course of the events giving rise to this litigation, it was renamed New Guinea Express Lines (A/Asia) Pty, Ltd. For ease of reference, we will refer to it throughout as "New Guinea Express."

in 1992, the sale of New Guinea Express would not have taken place.

Defendant timely filed the instant motion to dismiss for *forum non conveniens*, contending that this action "belongs" in Australia.

## DISCUSSION

■ Whether an action should be dismissed for *forum non conveniens* involves a balancing of the private and public interests outlined in *Gulf Oil Corporation v. Gilbert* (1947) 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055. "Unless [that] balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.* at 508, 67 S.Ct. at 843. Although a plaintiff's citizenship should not be accorded "talismanic significance," *see Alcoa S.S. Co. v. M/V Nordic Regent* (2d Cir.) 654 F.2d 147, 154, *cert. denied*, (1980) 449 U.S. 890, 101 S.Ct. 248, 66 L.Ed.2d 116, it is clear that "[t]he balance must be even stronger when the plaintiff is an American citizen and the alternative forum is a foreign one." *Olympic Corporation v. Societe Generale* (2d Cir.1972) 462 F.2d 376, 378; *see also American Special Risk Insurance Co. v. Delta America Re Insur. Co.* (S.D.N.Y.1986) 634 F.Supp. 112, 116.[2]

Before turning to an analysis of the *Gulf Oil* factors, we address defendant's contention that in this case the plaintiff's choice of forum is not entitled to the greater deference generally accorded the forum choice of a United States citizen faced with the alternative of litigating in a foreign country. In support of this contention, defendant misplaces reliance on the following language from Judge Sweet's opinion in *Broadcasting Rights v. Societe du Tour* (S.D.N.Y.1987) 675 F.Supp. 1439, 1446–47: "[W]here the real party in interest is a foreigner and the plaintiff is a United States citizen solely by virtue of its place of incorporation, the plaintiff's choice of fo-

rum will carry considerably less weight." Plaintiff plainly is not a United States citizen "solely" by virtue of its Delaware incorporation. As defendant must concede, plaintiff operates out of offices located in Roseland, New Jersey, and utilizes its parent's employees, who are, for the most part, New Jersey residents.

Defendant further contends that plaintiff is but a "shell" of its parent, Reefer, and, consequently, that Reefer's citizenship should be imputed to it for the purpose of *forum non conveniens* analysis. Even assuming the validity of this contention, we cannot say that plaintiff's choice of forum would be entitled to less deference. Although Reefer is incorporated under Bermuda law, its principal place of business is in Roseland, New Jersey, where its headquarters are, and where the overwhelming majority of its employees are based. Clearly, these contacts would defeat diversity jurisdiction were Reefer to sue a New Jersey citizen in federal court. We are not persuaded that even if plaintiff—like its parent—had been incorporated in Bermuda it would not, for the purposes of *forum non conveniens* analysis, be entitled to deference similar to that of a corporation organized under the laws of one of the United States.

Two other considerations weigh in favor of deferring to plaintiff's choice of forum. First, plaintiff has chosen a forum in which the defendant maintains a substantial presence. *Cf. Schertenleib v. Traum* (2d Cir. 1978) 589 F.2d 1156, 1164 (fact that "plaintiff chose this forum and defendant resides here ... weighs heavily against dismissal"). As noted above, defendant's branch in New York occupies three floors of a midtown Manhattan office building. Second, on the record before us, there is no indication that plaintiff's decision to file its action here was guided by any motive other than to avail itself of a convenient forum where its adversary would be subject to jurisdiction.[3]

---

**2.** We depart from Judge Cannella's opinion in *Shields v. Mi Ryung Construction Co.* (S.D.N.Y. 1981) 508 F.Supp. 891, 894 n. 4 in so far as it construes *Alcoa* to state that a uniform *forum non conveniens* standard is to be applied to suits brought by both United States and non-United States citizens.

**3.** We have been advised that plaintiff's offices in New Jersey are within twenty-five miles of this courthouse, and that defendant may well have

■ Having concluded that plaintiff's forum choice is entitled to deference, we turn now to our analysis of the *Gilbert* private and public interest factors. As summarized by Judge Weinfeld in *Transunion Corp. v. Pepsico, Inc.* (S.D.N.Y.1986) 640 F.Supp. 1211, 1215 (quoting *Fustok v. Banque Populaire Suisse* (S.D.N.Y.1982) 546 F.Supp. 506, 509 (Weinfeld, J.)), *aff'd*, (2d Cir.1987) 811 F.2d 127:

> The private interest factors include the location of evidence and witnesses, the availability of process to compel attendance of unwilling witnesses, as well as other practical problems that make trial of a case easy, expeditious, and inexpensive. The public interest factors include the difficulty which arises when a forum must apply foreign choice of law rules and foreign law, the administrative problems which follow when litigation is added to existing heavy caseloads in congested centers rather than being handled at its origin, and the imposition of jury duty upon a community which has no relation to the litigation.

### The Private Interest Factors

*Availability of witnesses and other evidence.* Defendant contends that "[a]ll of the important witnesses and evidence needed for trial are located in Australia." Def. Mem. at 14. These witnesses include four of defendant's employees and two New Guinea Express officials, all of whom are beyond the court's subpoena power. Their live testimony is required, defendant asserts, because "the crux of this litigation is whether the expiration date of the letter of credit diverged from the intentions and agreement of Westpac and [New Guinea Express]." Def. Mem. at 16.

Several considerations undercut these contentions. First, due to its narrow perspective of the issues raised by this litigation, defendant has failed fully to consider plaintiff's need to call witnesses who reside in the New York area. For example, plaintiff's estoppel claim is predicated upon an alleged promise by defendant to issue a letter of credit for the benefit of plaintiff in the form which either Reefer or plaintiff had provided. Horn Aff. at ¶ 6. Accordingly, plaintiff intends at the present time to call at least one of its officers, as well as a New York attorney, one Andrew Cosentino, who had been retained to effectuate the closing in Australia of the transaction transferring ownership of New Guinea Express. Both of these witnesses reside in the New York area, and Cosentino no longer performs any services on behalf of either plaintiff or Reefer.

Second, defendant's argument that its witnesses are beyond this court's subpoena power overlooks the likelihood that it exercises substantial control over four of its witnesses who are its employees. Moreover, we are not persuaded that defendant's efforts to gain the cooperation of New Guinea Express in obtaining the live testimony of its employees necessarily would be unavailing. Because of its agreement to indemnify defendant, New Guinea Express' interest in preserving its assets aligns it with defendant in this litigation. Even were defendant unable to obtain New Guinea Express' employees' live testimony at trial, there is nothing in the record to suggest that plaintiff would not suffer an equal or greater disadvantage were it required to try its case in Australia without the benefit of Cosentino's live testimony.

Finally, with respect to the availability of documentary evidence, we have not been made aware of any document or other evidence in Australia that could not easily be transported to this forum. *See Manu International, S.A. v. Avon Products, Inc.* (2d Cir.1981) 641 F.2d 62, 65.

*Defendant's inability to implead New Guinea Express.* Citing *Fitzgerald v. Texaco, Inc.* (2d Cir.1975) 521 F.2d 448, 453, *cert. denied,* (1976) 423 U.S. 1052, 96 S.Ct. 781, 46 L.Ed.2d 641 defendant correctly asserts that the inability to implead a third party is a factor that weighs in favor of dismissal. Specifically, defendant contends that permitting this action to proceed will render it vulnerable to potentially inconsistent judgments. Its primary concern is that

no "presence" in New Jersey adequate to establish jurisdiction over it.

the finder of fact in this action will determine that the letter of credit did not expire in June 1986, but that the finder of fact in Australia might render a contrary determination in the context of defendant's indemnity claim against New Guinea Express. We note, however, the absence in the record of any indication that an Australian court considering that claim would disregard the factual findings made here. That possibility seems especially unlikely since it appears that New Guinea Express's interest in establishing that the letter of credit expired in 1986 will be adequately represented by defendant's able counsel.

*Public Interest Factors*

Although the application of foreign law is clearly relevant, it is "a chore federal courts must often perform." *Manu International, S.A. v. Avon Products, Inc.* (2d Cir.1981) 641 F.2d 62, 66. Defendant would have us conclude that this matter raises "particularly thorny issues of foreign law." Def. Mem. at p. 18. While we agree that Australian law likely will govern plaintiff's claims, we observe that, at least at present, there appear to be no far-reaching issues of Australian law raised by this litigation. Indeed, the asserted claims raise relatively simple factual issues concerning the parties' intent with respect to the duration of the letter of credit, whether defendant promised to issue a letter of credit that would expire in 1992, and, if so, whether plaintiff reasonably relied upon that promise. Accordingly, we perceive no basis for concluding that the applicability of Australian law weighs heavily in favor of dismissal.

Nor do we find compelling the considerations of court congestion and burden on the jury. As noted above, this two-party dispute focuses on a letter of credit and the circumstances under which it was issued. At this stage of the litigation, there appear to be no more than a handful of potential witnesses. In short, we do not anticipate a lengthy or complicated trial and therefore conclude that the trial of this case would not impose an undue burden upon either the court or the jury. Moreover, we do not believe that Australia would have any particular interest in having its courts adjudicate the simple factual issues here presented, the resolution of which could not possibly have any substantial effect on the general administration of its laws.

CONCLUSION

Defendant's motion to dismiss for *forum non conveniens* is denied.

SO ORDERED.