[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION TO DISMISS OR MOTION FOR STAY (#103)
The plaintiffs brought this action for damages for breach of a distribution agreement and for other equitable relief against the defendant, an Italian corporation. The defendant moved to dismiss the plaintiffs' complaint on the grounds that (1) the parties' agreement contains a forum selection clause designating CT Page 12684 the court of Milan, Italy, as the exclusive forum for litigation between the parties; (2) dismissal is warranted by the common law doctrine of forum non conveniens; and (3) the court lacks personal jurisdiction over the defendant.
In the alternative, the defendant moved for a stay of these proceedings until the pending litigation in Italy, brought by the defendant against the plaintiffs and their related corporate entities was resolved.
For the reasons that follow, the motion to dismiss is denied; the motion to stay is granted.
 I. FACTUAL AND PROCEDURAL HISTORY
This action arises out of an international distribution agreement (agreement) originally executed on June 24, 1986, between two foreign companies, Illva Saronno, S.p. A. (defendant or Illva), a corporation organized and existing under the laws of Italy with its principal place of business located in Saronno, Italy, and International Distillers and Vintners, Ltd. (IDV-London), a corporation organized and existing under the laws of Great Britain with its principal place of business located in London, England. In 1990, IDV-London assigned its entire interest in the agreement to Indivined B. V. (Indivined), a corporation organized under the laws of the Netherlands with its principal place of business located in Amsterdam. IDV-London and Indivined are wholly owned subsidiaries of Grand Metropolitan Plc. (Grand Met).[1]
Pursuant to the terms of the distribution agreement, Illva, the manufacturer of a liqueur known as Amaretto di Saronno, granted to IDV-London the exclusive right to distribute Amaretto di Saronno in the United States and its territories and possessions, including Puerto Rico, the U.S. Virgin Islands and duty free outlets in that territory. The Paddington Corporation (Paddington), a New Jersey-based subsidiary of IDV-London, was appointed the sole source of Amaretto di Seronno in the United States. In 1991, Heublein International (Heublein) d/b/a International Distillers Duty Free, a Connecticut-based subsidiary of IDV-London, began distributing Amaretto di Saronno in duty free outlets and, in 1993, in Puerto Rico and the U.S. Virgin Islands.
In 1997, a series of mergers involving the above mentioned CT Page 12685 distributors occurred. On or about July 1, 1997, Paddington merged into Heublein, and Heublein changed its name to IDV North America, Inc. (IDV-NA). IDV-NA is a corporation organized and existing under the laws of Connecticut with its principal place of business located in Hartford, Connecticut. Additionally, on or about December 15, 1997, Grand Met, of which IDV-London, IDV-NA and Indivined were a part, merged with Guinness Plc. (Guinness) to form a corporation known as Diageo Plc.
Illva perceived that these mergers so changed the size, ownership, organizational structure, and product focus of IDV-London and the original distributing subsidiaries in the United States that Amaretto di Saronno's marketing position and competitiveness were jeopardized. By registered letter dated December 23, 1997, and addressed to IDV-London, Indivined, Heublein and International Distillers Duty Free, Illva gave notice that it was terminating the agreement, effective immediately, for the stated reason that "[t]he change of control of the Grand Met Plc. and its group following merger with Guinness Plc. constitutes a termination event for the purposes of . . . the Distribution Agreement . . ."
Nevertheless, over the ensuing months, the parties continued to communicate in an effort to address Illva's concern that the "substantial changes that occurred . . . by consequence of the merger [between Grand Met and Guinness] . . . are not compatible with our distribution agreement and in particular with the fiduciary and personal nature of this relationship. " Specifically, IIIva requested detailed information regarding the merger between Grand Met and Guinness, clarification of the ownership and organizational structure of the resulting entity, and an explanation of its consequences on the distribution of Amaretto di Saronno in the U.S. In addition to a meeting between the parties in London on or about February 24, 1998, Illva received written correspondence, in particular two letters dated March 9, 1998, and March 10, 1998, in response to its request for information.
On March 13, 1998, Illva commenced litigation by Writ of Summons in the Court of Milan, Italy ("the Italian action"), naming IDV-London, Indivined, Heublein and International Distillers Duty Free ("the distributors") as parties and seeking a determination of the performance and termination of the distribution agreement.[2] Illva petitioned the Italian court "to ascertain and declare the distribution contract automatically CT Page 12686 terminated" due to the irremediable breach by the distributors of various terms of the agreement, or alternatively to declare the contract terminated upon a finding that the defendants are in "violation of the fiduciary nature of the relationship and the principle of good faith in executing the contract." (Lombardi Affidavit, ¶ 9 and Exhibit B, p. 11.)
On March 18, 1998, Illva sent a registered letter to IDV-London, Indivined, Heublein and International Distillers Duty Free. The distributors were notified that the information concerning the merger provided in response to Illva's request was completely generic, not clear and not to [Illva's] satisfaction" and that Illva was terminating the contract. (Horowitz Affidavit, Exhibit 10.)
Approximately two months later, on May 21, 1998, while the Italian action was pending, IDV-NA[3] and Indivined, the plaintiffs here brought this action ("the Connecticut action") against Illva alleging that Illva's termination of the distribution agreement was without any good faith basis, was intentionally and willfully calculated to deprive the plaintiffs of the benefits of the agreement, and constituted a material breach of the agreement. The plaintiffs seek money damages (count one), a declaration that Illva does not have cause to terminate the agreement and that the distribution agreement remains in full force and effect (count two), and an injunction requiring lIlva to perform pursuant to the agreement and enjoining Illva from granting distribution rights to any other entity (count three).
Presently before the court is the defendant's motion to dismiss the Connecticut action on the grounds that (1) the agreement contains a forum selection clause designating the Court of Milan, Italy, as the exclusive forum within which to bring this action; (2) the common law doctrine of forum non conveniens warrants dismissal; and (3) the court lacks personal jurisdiction over the defendant. Alternatively, the defendant moves to stay the Connecticut action pending resolution of the Italian action. Additional facts will be set forth as needed.
 II. PERSONAL JURISDICTION
The court first addresses the defendant's motion to dismiss on the ground the court lacks personal jurisdiction over the defendant. "`Because a lack of personal jurisdiction may be waived by the defendant, the rules of practice require the CT Page 12687 defendant to challenge that jurisdiction by a motion to dismiss.'Standard Tallow Corp. v. Jowdy, 190 Conn. 48, 53-54, 459 A.2d 503
(1983)." Knipple v. Viking Communications, Ltd., 236 Conn. 602,605-06, 674 A.2d 426 (1996). "[T]he court, in deciding a motion to dismiss, must consider the allegations of the complaint in their most favorable light. . . ." (Internal quotation marks omitted; citation omitted.) Savage v. Aronson, 214 Conn. 256,264, 571 A.2d 696 (1990). "The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone. . . . Where, however, as here, the motion is accompanied by supporting affidavits containing undisputed facts, the court may look to their content for determination of the jurisdictional issue and need not conclusively presume the validity of the allegations of the complaint." (Footnote omitted; internal quotation marks omitted; citation omitted.) Barde v. Board of Trustees, 207 Conn. 59, 62,539 A.2d 1000 (1988); see Malasky v. Metal Products Corp.,44 Conn. App. 446, 451-52, 689 A.2d 1145, cert. denied,241 Conn. 906, 695 A.2d 539 (1997).
"When a defendant files a motion to dismiss challenging the court's jurisdiction, a two part inquiry is required. The trial court must first `decide whether the applicable state long-arm statute authorizes the assertion of jurisdiction over the [defendant]. If the statutory requirements [are] met, its second obligation [is] then to decide whether the exercise of jurisdiction over the [defendant] would violate constitutional principles of due process.' Frazer v. McGowan, 198 Conn. 243, 46,502 A.2d 905 (1986); see Thomason v. Chemical Bank,234 Conn. 281, 286, 661 A.2d 595 (1995); Lombard Bros., Inc. v. GeneralAsset Management Co., 190 Conn. 245, 250, 460 A.2d 481 (1983)." (Footnote omitted.) Knipple v. Viking Communications, Ltd.,
supra, 236 Conn. 606. "If a challenge to the court's personal jurisdiction is raised by a defendant, either by a foreign corporation or by a nonresident individual, the plaintiff must bear the burden of proving the court's jurisdiction." Knipple v.Viking Communications. Ltd., supra, 607.
 A. The Long-Arm Statute
The applicable long-arm statute in this case is General Statutes § 33-929 (f). Section 33-929 (f) provides in relevant part: "Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person CT Page 12688 having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state; (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state; (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers.
The defendant claims that the requirements of § 33-929
(f) are not met. The defendant argues that neither § 33-929
(f)(1) nor § 33-929 (f)(2) provides a basis for jurisdiction because IIIva's conduct was limited to Italy, where it sold its product "F.O.B. Italian border" the effect of which was to transfer title at that location. Although the defendant does not dispute that the plaintiffs' performance of the agreement substantially occurred in the United States, including Connecticut, the defendant asserts that Illva did not perform any part of the agreement in Connecticut. In addition, the defendant argues that jurisdiction under § 33-929 (f)(3) fails because the plaintiffs' cause of action is materially different from the kind of action which theoretically might be brought by apurchaser of the defendant's product. Instead, the defendant asserts, the plaintiffs' cause of action arises out of the defendant's performance of the agreement in Italy and does not arise out of the production, manufacture or distribution of goods in Connecticut.
The plaintiffs dispute the defendant's claim that the court lacks personal jurisdiction over the defendant pursuant to §33-929 (f)(1) because the defendant's performance of the agreement was limited to Italy. They argue that performance of the agreement in Connecticut by the plaintiffs alone is sufficient to satisfy the statute.
The court agrees with the plaintiffs. "In determining whether personal jurisdiction is proper pursuant to [§ 33-929 (f) (1)], the [plaintiffs] must "initially establish prima facie that CT Page 12689 a contract existed and that it was to be performed in Connecticut within the meaning of [that statute.]'" The Travelers Ins. v. ParIndustries, Inc., Superior Court, judicial district of New Haven at New Haven, Docket No. 394427 (February 5, 1998, Hartmere, J.), quoting Allard v. Transtek International, Ltd., Superior Court, judicial district of Litchfield, Docket No. 61582 (December 7, 1993, Pickett, J.).
The existence of the agreement is not disputed. Additionally, while it is clear that the agreement must contemplate or encompass some performance in Connecticut, that performance need not be by the defendant. "The phrase `to be performed in this state' does not require performance in this state by the party over whom jurisdiction is sought. . . . Jurisdiction is appropriate where the contract in question clearly contemplated and required performance in this state by the [plaintiffs] . . .Litterbug v. McCann Real Equities Development, Superior Court, judicial district of New Haven at New Haven, Docket No. 379974 (February 21, 1996, Freedman, J.), citing Bowman v. GrolscheBierbrouwerij B. V., 474 F. Sup. 725, 731-32 (D. Conn. 1979); see also KMH Partners v. New World Coffee Bagels, Inc., Superior Court, judicial district of Tolland at Rockville, Docket No. 68192 (November 25, 1998, Klaczak, J.); Thornton Co. Inc. v.Pennsak, Inc., Superior Court, judicial district of New Britain, Docket No. 490607 (November 20, 1998, Robinson, J.); Merrick v.Sandair Nevada, Inc., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 345327 (April 7, 1998,Stodolink, J.); Gamelstaden PLC v. Lindholm, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 130058 (February 28, 1996, Karazin, J); The Travelers Ins. v. ParIndustries, Inc., supra, Superior Court, Docket No. 394427. See also Willametz v. Susi Contracting Co., 9 Conn. App. 1,514 A.2d 383, cert. denied, 201 Conn. 814, 517 A.2d 631, (1986) andChevrette v. U. Haul Co. of New Mexico, 7 Conn. App. 617,510 A.2d 206 (1986) which implicitly recognize that personal jurisdiction is appropriate under § 33-929 (f)(1) where the contract contemplates performance in this state by the plaintiffs.
Here, the agreement clearly contemplated and required performance by the plaintiffs in Connecticut. Pursuant to the terms of the agreement, the plaintiffs agreed to distribute and promote Amaretto di Saronno in the United States, its territories and possessions, including Puerto Rico and the U.S. Virgin Islands, and duty free outlets located in the territory. CT Page 12690 Connecticut certainly is a part of the contemplated territory. In fact, pursuant to its obligations under the contract, the plaintiff IDV-NA employed a Distributor Manager whose primary responsibility was to oversee and promote sales of the liqueur in Connecticut.
Thus, the court finds as a factual matter that the defendant entered into a contract which clearly contemplated substantial performance in this state. This is sufficient to satisfy the long-arm statutory requirements for establishing personal jurisdiction over the defendant. Because the court finds that § 33-929 (f)(1) provides a sufficient basis for the exercise of jurisdiction over the defendant, the court need not address whether jurisdiction is also appropriate under § 33-929 (f) (2) or (3).
 B. Due Process "Minimum Contacts"
Since it has been determined that the requirements of the state long-arm statute have been met, the court next must consider whether the exercise of personal jurisdiction over the defendant comports with the principles of due process. "The federal due process clause permits state courts to exercise in personam jurisdiction over a nonresident corporate defendant that has" certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. International Shoe Co. v.Washington, 326 U.S. 310, 316 [66 S.Ct. 154, 90 L.Ed. 95] (1945), quoting Milliken v. Meyer, 311 U.S. 457, 463
[61 S.Ct. 339, 85 L.Ed. 278] (1940).'. . . Helicopteros Nacionales deColombia, S. A. v. Hall, 466 U.S. 408, 414, 104 S.Ct. 1868,80 L.Ed.2d 404 (1984)." (Internal quotation marks omitted.)Thomason v. Chemical Bank, supra, 234 Conn. 287. "The twin touchstones of due process analysis under the minimum contacts doctrine are foreseeability and fairness. "[T]he foreseeability that is critical to due process analysis is that the defendant's conduct and connection with the forum [s]tate are such that [the defendant] should reasonably anticipate being haled into court there.'" United States Trust Co. v. Bohart, 197 Conn. 34, 41,495 A.2d 1034 (1985), quoting WorldWide Volkswagen Corp. v. Woodson,444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). "The specific facts of each case necessarily determine the outcome of a minimum contacts analysis." Id., 42.
"Either `specific' jurisdiction or `general' jurisdiction can CT Page 12691 satisfy the constitutional requirement of sufficient minimum contacts between the defendant and the forum. A state court will have `specific' jurisdiction over a nonresident defendant whenever the defendant "has purposefully directed [its] activities at residents of the forum, . . . and the litigation [has] result[ed] from alleged injuries that arise out of or relate to those activities. . . .'" (Citations omitted; emphasis omitted; internal quotation marks omitted.) Thomason v. ChemicalBank, supra, 234 Conn. 287-88, quoting Burger King Corp. v.Rudzewicz, 471 U.S. 462, 472-73, 105 S.Ct. 2174,85 L.Ed.2d 528 (1985). Alternatively, "general" jurisdiction "may be exercised even when there is no causal connection between the defendant's forum-directed activities and the plaintiffs lawsuit, as long as the defendant has had "continuous and systematic general business contacts' with the state." Thomason v. ChemicalBank, supra, 290, quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, supra, 466 U.S. 415-16.
The defendant offers the affidavit of Augusto Reina, Managing Director of ILLva Saronno, S.p. A., who attests: "Illva Saronno does not transact business in Connecticut. IIIva Saronno does not maintain any office or employee in Connecticut, owns no real or personal property located in Connecticut, has no telephones or telephone listings in Connecticut, maintains no Connecticut post office box or street address, is not authorized to do business in Connecticut, does not advertise in Connecticut, does not pay Connecticut taxes, has appointed no agents in Connecticut for service of process, has never been party to a lawsuit or legal proceedings in Connecticut, has filed no papers with any agency of Connecticut, has no bank account located in Connecticut, and has neither negotiated or executed any written contracts in Connecticut, or is a party to any contracts that call for Illva Saronno's performance in Connecticut." (Affidavit of Augusto Reina, November 1998, ¶ 4.)
The court nevertheless finds several significant contacts of the defendant with Connecticut. First and foremost, the defendant entered into a contract which clearly contemplated substantial performance in the United States, including Connecticut. The defendant consented to the appointment of an exclusive United States distributor, which, through a series of mergers, is now IDV-NA, a Connecticut corporation with its principal place of business in Hartford, Connecticut. Under the contract, it was the defendant's purpose and intent that the product which it manufactured be widely distributed in the United States, CT Page 12692 including Connecticut. The liqueur manufactured by the defendant was, in fact, distributed in Connecticut. See The Travelers Ins.v. Par Industries, Inc., supra, Superior Court, Docket No. 394427 (distribution of defendant's product in Connecticut a factor considered by court in determining that defendant had sufficient contacts with the state in breach of insurance contract case);Margolin v. Specialty Publishers, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 306754 (March 14, 1995, Hauser, J.) (partial performance of contract and distribution of defendant's product in Connecticut, as well as fact that representatives of defendant sent to Connecticut to conduct various activities, were factors considered by court in determining that defendant had sufficient contacts with the state in breach of employment contract case).
In addition, representatives or employees of the defendant regularly met in Connecticut with representatives or employees of IDV-NA. For example, Mike D'Arienzo, a New York-based Illva employee charged with overseeing the distribution of Amaretto di Saronno in Connecticut and other northeastern states, met on a monthly basis in Connecticut with Ron Melillo, IDV-NA's Connecticut Distributor Manager, "to review sales figures, discuss suggested pricing for the state, and suggest ways to promote the brand in the state." (Melillo Affidavit, ¶¶ 5-6.) D'Arienzo met with Connecticut wholesalers "so that he could develop a personal rapport with the principals and get a feel for how sales were going in the state." (Melillo Affidavit, ¶ 6.) In addition to his monthly visits, D'Arienzo "came to Connecticut on other occasions during the year, such as for `holiday' trade shows in which wholesalers and retailers in the state would display their products . . . to ensure that Amaretto di Saronno was being properly displayed and promoted." (Melillo Affidavit, ¶ 7.) Finally, D'Arienzo often suggested and provided funding for promotions that were local to the Connecticut market.
In addition, John Milstead, an Illva consultant based in California who was responsible for overseeing the distribution of Amaretto di Saronno in duty free outlets, met in Connecticut with representatives or employees of Heublein, now IDVNA, d/b/a/ International Distillers Duty Free, a Connecticut corporation with its principal place of business in Hartford, Connecticut, to discuss the distribution of Amaretto di Saronno in duty free outlets. Milstead and the vice president of International Distillers Duty Free met in Connecticut "three to four times per year for a comprehensive business review covering sales, pricing, CT Page 12693 shipments to customers, and marketing plans and budget." (Affidavit of Chase F. Donaldson, December 21, 1998, ¶ 4.)
The court concludes that Illva's contacts with Connecticut pursuant to its obligations under the agreement and relating to the promotion and distribution of its product in the state are sufficient for Illva to have reasonably anticipated being haled into court in Connecticut for an alleged breach of the agreement. These contacts demonstrate that the defendant has purposefully availed itself of the advantages of conducting activities in this state. See, e.g., Burger King Corp. v. Rudzewicz, supra,471 U.S. 474-75. Therefore, the defendant's motion to dismiss on the ground that the court lacks personal jurisdiction over the defendant is denied.
 III. FORUM SELECTION CLAUSE A. The Parties' Arguments
The defendant next moves to dismiss the plaintiffs' action on the ground that the agreement contains a forum selection clause providing for the resolution of all disputes in the Court of Milan, Italy. Article 12 of the agreement, as translated from the Italian, provides: "This agreement, made in Italy, is governed, also for all is not stated herein, by the Laws of Italy. It is however agreed and accepted that exclusively the agreement written in the Italian language is deemed to be valid. For any and all dispute the parties hereof elect the Court of Milan as competent Court." (Agreement, Article 12.) The defendant argues that parties to a contract may expressly agree in advance to submit to the jurisdiction of a particular forum to resolve disputes and that in the present case the parties' selection of the Court of Milan should be enforced by the court.
The plaintiffs do not dispute that forum selection clauses are valid and enforceable. They argue, however, that the forum selection clause in the present case merely expresses the parties' consent to the Italian forum. The plaintiffs argue that consent to the jurisdiction of a particular court does not foreclose suit in another court otherwise having jurisdiction unless the forum selection clause contains express language indicating the parties' intent to make such jurisdictionexclusive. Thus, relying on Boutari and Son, Wines and Spirits v.Attiki Importers and Distributors, Inc., 22 F.3d 51 (1994), the plaintiffs oppose the defendant's motion to dismiss based on the CT Page 12694 forum selection clause, arguing that the language of the clause does not indicate that the jurisdiction of the Court of Milan, Italy, is exclusive.
The defendant replies that, in addition to the forum selection clause, the contract contains a choice of law provision designating Italian law as the applicable law. The defendant argues that under Italian law, Article 17 of the Brussells Convention applies and requires that the forum selection clause be interpreted as conferring exclusive jurisdiction to the Court of Milan. Article 17 provides in relevant part: "If the parties, one or more of whom is domiciled in a Contracting State, have agreed that a court or the courts of a Contracting State are to have jurisdiction to settle any disputes which have arisen or which may arise in connection with a particular legal relationship, that court or those courts shall have exclusive jurisdiction."
The plaintiffs' response is that, although Italian law applies and the parties are subject to the Brussells Convention, Article 17 merely authorizes contracting parties to "contract out" of the general rules for determining jurisdiction but does not preclude them from creating a non-exclusive forum selection clause such as the parties did in this case. The plaintiffs rely on All-Tech Industries v. Freitag Electronic, GmbH, 1988 WL 84719 (N.D. ILL.), to buttress their contention that Article 17 does not operate to override the well-established rule that a forum selection clause will not be interpreted as exclusive unless it contains clear language to that effect.
 B. Enforceability
The general rule is that forum selection clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching."The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15,92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) (enforcing a foreign forum selection clause). The rationale for enforcing forum selection clauses is grounded in freedom of contract and an appreciation of the expanding horizons of American business enterprises who seek business in all parts of the world. "Manifestly much uncertainty and possible great inconvenience to both parties could arise if a suit could be maintained in any jurisdiction in which an accident might occur or if jurisdiction were left to any place where the CT Page 12695 [subject matter of the contract] might happen to be found. The elimination of all such uncertainties by agreeing in advance on a forum acceptable to both parties is an indispensable element in international trade, commerce, and contracting." The Bremen v.Zapata Off-Shore Co., supra, 407 U.S. 13-14.
Specifically regarding international transactions, the U.S. Supreme Court has commented that "uncertainty will almost inevitably exist with respect to any contract touching two or more countries, each with its own substantive laws and conflict-of laws rules. A contractual provision specifying in advance the forum in which disputes shall be litigated and the law to be applied is, therefore, an almost indispensable precondition to achievement of the orderliness and predictability essential to any international business transaction." Scherk v. Alberto-CulverCo., 417 U.S. 506, 516, 94 S.Ct. 2449, 41 L.Ed.2d 279 (1974). For without such a provision, "the dicey atmosphere of such a legal no-man's-land would surely damage the fabric of international commerce and trade, and imperil the willingness and ability of businessmen to enter into international commercial agreements." Id., 517.
The existence of a forum selection clause raises the issue, not of subject matter jurisdiction, but of whether a contract provision should be enforced. See Total Telecommunications, Inc.v. Target Telecom, Inc., Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 53516 (March 11, 1997,Corradino, J.). "`Under this more modern view, the courts treat the [forum selection] contractual provision not as one which seeks to oust the court of jurisdiction, but rather as a provision which will allow the court to decline jurisdiction if it is reasonable to do so. Where no additional expense is created, the witnesses are available at either location, the party will not lose his [sic] remedy, and the provision was freely bargained for, the courts have declined jurisdiction and enforced the contract. . . . On the other hand, where the party seeking to avoid the clause has satisfied his [sic] burden of proof and shown that enforcement of the clause will cause undue hardship or has not been freely bargained for, the courts have refused to enforce it.'" Id., quoting 31 ALR 4th 395, 409.
Two examples are frequently given by courts of circumstances under which a court should decline to enforce a forum selection clause despite the fact it was freely bargained for and the lack of any evidence tending to show fraud or overreaching. First, CT Page 12696 "[a] contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision. The Bremen v. Zapata Off-ShoreCo., supra, 407 U.S. 15. Second, "[c]ourts have also suggested that a forum clause, even though it is freely bargained for and contravenes no important public policy of the forum, may nevertheless be `unreasonable' and unenforceable if the chosen forum is seriously inconvenient for the trial of the action." (Emphasis in original.) Id., 16.
Connecticut courts generally uphold the validity of forum selection clauses. "[I]n commercial transactions, parties often consent to resolve disputes in a particular jurisdiction by incorporating forum selection clauses into their contracts. Connecticut case law is clear that the courts will uphold an agreement of the parties to submit to the jurisdiction of a particular tribunal." Phoenix Leasing, Inc. v. Kosinski,47 Conn. App. 650, 653, 707 A.2d 314 (1998), citing United States TrustCo. v. Bohart, 197 Conn. 34, 41-42, 495 A.2d 1034 (1985) ("[P]arties to a contract may agree in advance to submit to the jurisdiction of a given court. . . . Absent a showing of fraud or overreaching, such forum clauses will be enforced by the courts."); see also Alca Construction Co. v. Waterbury HousingAuthority, 49 Conn. App. 78, 85-85, 713 A.2d 886 (1998) (affirming trial court's enforcement of forum selection provision); Fairfield Lease Corp. v. Romano's Auto Service,4 Conn. App. 495, 498, 495 A.2d 286 (1985) (where court selected by the parties is reasonably appropriate, and where there is no indication of greatly disproportionate bargaining power, the tendency is to enforce such agreements).
The court in Total Telecommunications, Inc. v. TargetTelecom, Inc., supra, Superior Court, Docket No. 53516, in an extensive opinion applied a two-step analysis in determining whether to enforce a forum selection clause. First, the court determined that there was no fraud, deception, or disparity of bargaining power in the formation of the contract or the inclusion of the forum selection clause. Second, the court addressed the question of whether, even in the absence of fraud or overreaching, enforcement of the clause would be so inconvenient to the resisting party that it would be unfair to dismiss the action based on the clause. The court pointed out that "the inconvenience' necessary to persuade a court to decline to enforce a forum selection clause that has been found to be CT Page 12697 valid must be serious inconvenience, such inconvenience as would effectively deprive a plaintiff . . . of a forum in which to pursue its claim against [the defendant]. The added expense and time of litigating in the selected forum falls far short of meeting that standard." Id. Notably, with respect to foreign forum selection clauses the court stated that "while it recognized the hardship that would be imposed on a party forced to litigate in a foreign country because of a forum selection clause the alternative of using depositions provided adequate opportunity for the litigant to have its "fair day in court.'" Id.
In the present action, the plaintiffs do not contest the general validity of forum selection clauses nor do the plaintiffs resist enforcement of the particular clause at issue here based on fraud or serious inconvenience. Rather, the dispute is over whether the language of the clause is sufficient to confer exclusive jurisdiction upon the Italian court. Thus, I turn to a discussion of the requirement of exclusivity.
 C. Exclusivity Language
The general rule, as demonstrated by several federal cases, is that a forum selection clause conferring jurisdiction in one forum will not be interpreted as excluding jurisdiction elsewhere unless it contains specific language of exclusion. See Boutariand Son, Wines and Spirits v. Attiki Importers and Distributors,Inc., 22 F.3d 51, 52 (1994) ("The general rule in cases containing forum selection clauses is that "[w]hen only jurisdiction is specified the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive.'"); see also Docksider,Ltd. v. Sea Technology, Ltd., 875 F.2d 762, 764 (9th Cir. 1989);Hunt Wesson Foods, Inc. v. Supreme Oil Co., 817 F.2d 75, 77-78, (9th Cir. 1987).
Connecticut case law also appears to impose the requirement that the language of the clause indicate that the forum choice is exclusive. See Dan Perkins Chevrolet v. Auto Tell Services, Inc.,
Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 36508 (March 17, 1992, Flynn, J.); Copelco LeasingCorp. v. Fox, Superior Court, judicial district of New Haven at New Haven, Docket No. 324266 (February 7, 1992, DeMayo, J.).
In the present case, the agreement contains a choice of law CT Page 12698 provision providing that the agreement is to be governed by the laws of Italy. Under Connecticut choice of law rules, adopted from the Restatement (Second) of Conflict of Laws, §§ 187 and 188, "parties to a contract generally are allowed to select the law that will govern their contract, unless either:" (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.'"[4]Elgar v. Elgar, 238 Conn. 839, 850, 679 A.2d 937 (1996).
The parties to this action have not contested the choice of law provision. The parties have not raised any argument demonstrating that Italy lacks a substantial relationship to the parties or the transaction. In fact, Italy has a substantial relationship to this action in that (1) one of the parties, the defendant, is an Italian corporation with its principal place of business in Italy; (2) the contract was negotiated and made in Italy and provides that the Italian translation of the contract is exclusively valid'; (3) the subject matter of the contract, the liqueur, is manufactured in Italy; and (4) performance of the contract, at least in part, occurred in Italy.
In addition, the parties have not raised any argument demonstrating that the application of Italian law to this controversy will defeat some materially greater interest of Connecticut. Although there exists contacts with Connecticut; i.e., (1) one of the named plaintiffs is a Connecticut corporation and maintains its principal place of business in Connecticut; (2) performance of the contract, at least in part, occurred in Connecticut; and (3) the subject matter of the contract, the exclusive distributorship, is located in the United States, including Connecticut; I conclude that these contacts with Connecticut are not "materially greater" than those of Italy so as to trigger an inquiry into the relative policy interests. See Elgar v. Elgar, supra, 238 Conn. 851-52.
Therefore, Italian law applies to determine the proper interpretation of the forum selection clause. See Elgar v. Elgar,
supra, 238 Conn. 850-52; see also Capuano v. Brown, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CT Page 12699 339085 (July 22, 1998, Skolnick, J.) (applying § 187 to uphold parties' choice of law where parties did not contest the provision); Security Ins. Co. of Hartford v. Lumbermens MutualCasualty Co., Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 475565 (May 8, 1998, Graham,J.) (same); Barclays Business Credit, Inc. v. Freyer, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 152347 (May 6, 1997, D'Andrea, J.) (applying § 187 to use the parties' choice of U.S. Virgin Island law in interpreting waiver clause of guaranty contract); Valley Juice Ltd., Inc. v.Evian Waters of France, Inc., 87 F.3d 604, 608-09 (1996) (under Connecticut choice of law regime, parties' contractual choice of law is respected).[5] The issue then is whether, under Italian law, the language of the forum selection clause would in fact, as the defendant argues, be interpreted as conferring exclusive jurisdiction upon the Italian court.
 D. Conclusion
Both parties offer numerous supporting affidavits of persons who based upon their education and experience have considerable knowledge of Italian law. For example, the plaintiffs offer the affidavit of Giovanni Nardulli, a partner in an Italian law firm, who attests that under Italian law, the forum selection clause "governs only the choice of the competent forum in Italy and does not provide for an exclusive jurisdiction of the Italian court." (Nardulli Affidavit, ¶ 4.) On the other hand, the defendant offers the affidavits of Laura Salvaneschi, a professor of civil procedure at the University of Milan, who attests that all of the original parties to the contract are subject to the provisions of the Brussels Convention and that the interpretation and application of Article 17 by Italian authorities render the forum selection clause exclusive.
In addition, as requested by the court, both parties were given the opportunity to provide copies to the court of English translations of the various Italian authorities cited in support of their respective positions. The court received translations and synopses in English of selected Italian authorities.
After careful consideration of the briefs, affidavits and other supporting materials submitted by the parties, the court concludes that, the defendant has failed to show that under Italian law, the language of the forum selection clause confers exclusive jurisdiction on the Italian court. See Italian Supreme CT Page 12700 Court, December 20, 1995, no. 12971 (English language synopsis: "The agreement which provides which Court, different from the territorial competent Court established by the law, shall be competent does not mean the exclusive competence of such Court, unless it results a mutual will of the parties aiming at excluding the competence of the ordinary Courts."); Italian Supreme Court, March 25, 1994, no. 2915 (English language synopsis: "The clause providing which Court shall be competent for all disputes concerning the performance of a contract (art. 29 Italian Civil Procedure Code), even though it is approved in writing pursuant to art. 1341 Italian Civil Code, does not mean declaration of exclusive competence and does not exclude the ordinary competence, since for such effect the parties must declare the mutual will both to exclude the jurisdiction of the Court established by the law and to exclude the concurrence of the chosen Court with the ordinary competent Court). Nor is the court persuaded that the Italian courts interpret Article 17 of the Brussells Convention as operating to transform any choice of forum into an exclusive one.
In short, the court declines to dismiss the plaintiffs' action on the ground that the language of the forum selection clause as interpreted by Italian law manifests the parties' intent that the jurisdiction of the Court of Milan, Italy, be exclusive. Therefore, the defendant's motion to dismiss the plaintiffs' action on this ground is denied.
 IV. FORUM NON CONVENIENS A. Distinction Between Forum Selection Clause and Forum Non Conveniens
The defendant's next ground in support of its motion to dismiss is the doctrine of forum non conveniens. Similar to the analysis to determine the enforceability of a forum selection clause, the doctrine of forum non conveniens assumes that the court has subject matter jurisdiction over a particular matter but, in its discretion, declines to exercise it. See Picketts v.International Playtex, Inc., 215 Conn. 490, 500, 576 A.2d 518
(1990); Union Carbide Corp. v. Aetna Casualty Surety Co.,212 Conn. 311, 314, 562 A.2d 15 (1989). Whereas the authority to decline to exercise jurisdiction and dismiss a case based upon a forum selection clause is grounded in contract law and the court's duty to enforce express contractual provisions; see TotalTelecommunications, Inc. v. Target Telecom, Inc., supra, Superior CT Page 12701 Court, Docket No. 53516; the authority to dismiss a case based upon forum non conveniens is grounded in the common law; seePicketts v. International Playtex, Inc., supra. "As a common law matter, the doctrine of forum non conveniens vests discretion in the trial court to decide where trial will best serve the convenience of the parties and the ends of justice." (Internal quotation marks omitted.) Union Carbide Corp. v. Aetna Casualty Surety Co., supra, 319. In addition, while courts have held that by contractually agreeing to select in advance a particular forum for resolution of disputes, the parties thereby submit to jurisdiction in that forum; see United States Trust Co. v.Bohart, supra, 197 Conn. 41-43; Phoenix Leasing, Inc. v.Kosinski, supra, 47 Conn. App. 653-54; the doctrine of forum non conveniens presupposes the existence of at least one other forum which could exercise both personal and subject matter jurisdiction over the case, regardless of the parties' consent; see Picketts v. International Playtex, Inc., supra, 504 n. 13. Thus, even though the court declines to dismiss the case based upon the contractual forum selection provision, the court still must consider whether the case should be dismissed under the common law doctrine of forum non conveniens.
 B. General Principles
The leading case on the doctrine of forum non conveniens isGulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839,91 L.Ed. 1055 (1947). Connecticut courts have adopted the methodology suggested by Gulf Oil Corp. v. Gilbert, supra, as a useful guide when resolving forum non conveniens issues arising in state cases. See, e.g., Picketts v. International Playtex, Inc., supra,215 Conn. 497; Union Carbide Corp. v. Aetna Casualty SuretyCo., supra, 212 Conn. 319; Schrader v. United Services AutomobileAssn., 33 Conn. App. 923, 635 A.2d 883 (1994); Miller v. UnitedTechnologies Corp., 40 Conn. Sup. 457, 460, 515 A.2d 390 (1986);Schwartz v. Bitter End Yacht Club International, Inc., Superior Court, judicial district of New Haven, Docket No. 398306 (May 18, 1998, Zoarski, J).
"[T]he central principle of the forum non conveniens doctrine [is] that "unless the balance is strongly in favor of thedefendant, the plaintiff's choice of forum should rarely bedisturbed.'" (Emphasis in original.) Picketts v. InternationalPlaytex, Inc., supra, 215 Conn. 500, quoting Gulf Oil Corp. v.Gilbert, supra, 330 U.S. 508. "[I]t bears emphasis that invocation of the doctrine of forum non conveniens is a drastic CT Page 12702 remedy., which the trial court must approach with caution and restraint. The trial court does not have unchecked discretion to dismiss cases from a plaintiffs chosen forum simply because another forum, in the court's view, may be superior to that chosen by the plaintiff. . . . The plaintiff's choice of forum, which may well have been chosen precisely because it provides the plaintiff with certain procedural or substantive advantages, should be respected unless equity weighs strongly in favor of the defendant." (Citations omitted; internal quotation marks omitted.) Picketts v. International Playtex, Inc., supra, 500-01. Thus, "[t]he overriding inquiry in a forum non conveniens motion is not whether some other forum might be a good one, or even a better one than the plaintiffs chosen forum. The question to be answered is whether [the] plaintiffs chosen forum is itself inappropriate or unfair because of the various private and public interest considerations involved." (Internal quotation marks omitted.) Id., 501. "Accordingly, the trial court, in exercising its structured discretion, should place its thumb firmly on the plaintiffs side of the scale, as a representation of the strong presumption in favor of the plaintiffs chosen forum, before attempting to balance the private and public interest factors relevant to a forum non conveniens motion." Id., 501-02.
 C. Analysis
"The court should proceed in four steps: (1) The court should determine if an adequate alternative forum exists which possesses jurisdiction over the whole case. (2) The court should consider all relevant factors of private interest with a strong presumption against disturbing the plaintiffs' initial forum choice. (3) If the balance of private interest factors is equal, then the court should consider if any public interest tips the balance toward the foreign forum. (4) If the public interest does tip toward the foreign forum, then the court must make sure the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." Miller v. United TechnologiesCorp., supra, 40 Conn. Sup. 460.
 1. Existence of Adequate Alternative Forum
The plaintiffs in the present case do not contest that the Court of Milan, Italy, is an alternative forum for this action. The forum selection clause included in the parties' agreement, while not exclusive, indicates both parties' consent to submit to the Italian jurisdiction. Therefore, an adequate alternative CT Page 12703 forum, the Court of Milan, exists.
 2. Private Interest Factors
As indicated above, the court proceeds with its consideration of private interest factors with a strong presumption against disturbing the plaintiffs' initial choice of forum. "The private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses; (3) the possibility of viewing the accident scene if such viewing is appropriate to the action; (4) the enforceability of a judgment; (5) the relative advantages and obstacles to fair trial; and (6) all other practical problems that make trial of a case easy, expeditious and inexpensive."Miller v. United Technologies Corp., supra, 40 Conn. Sup. 463, citing Gulf Oil Corp. v. Gilbert, supra, 330 U.S. 507-09.
With regard to the first and second factors, both sides offer a list of expected witnesses, with the plaintiffs' witnesses primarily residing in Connecticut and the defendant's in Italy or Great Britain. In addition, while the plaintiffs argue that the bulk of relevant documentary evidence is located in Connecticut, the defendant argues that such evidence is located in Italy.
In terms of the accessibility of witnesses and documentary evidence the balance does not weigh more heavily in favor of either forum. In fact, particularly with regard to the accessibility of foreign witnesses, this factor has become significantly less important in light of Picketts v.International Playtex, Inc., supra, 215 Conn. 511, which recognized that modern technological innovations such as jet travel, satellite communications, and videotaped depositions substantially decrease the difficulties parties previously experienced in ensuring the testimony of foreign witnesses. At any rate, there is no evidence indicating that the difficulties and costs that the defendant may experience in transporting documentary evidence and in compelling unwilling witnesses to testify in Connecticut would be any greater than the difficulties and costs the plaintiffs may experience if litigation occurred in Italy.
The only other private interest factor addressed by the parties is the fourth factor, the enforceability in Italy of any Connecticut judgment obtained by the plaintiffs. The defendant CT Page 12704 offers the affidavit of Laura Salvaneschi who attests that Italian law governing the recognition of foreign judgments imposes certain preconditions to recognition, one of which is that "there are no cases pending before an Italian judge for the same subject matter and between the same parties which were commenced before the foreign proceeding." (Salvaneschi Affidavit, ¶ 25.) Thus, the defendant argues that, in this case, because of the suit already pending in Italy to determine the same issues between the same parties involved in this action, the plaintiffs fail to satisfy the precondition and likely would be unable to enforce any judgment rendered by an American state court in Italy.
The plaintiffs' ability to enforce a Connecticut judgment in Italy is particularly important in this case because the affidavit of Augusto Reina states that the defendant "owns no real or personal property located in Connecticut" and "has no bank account located in Connecticut." (Reina Affidavit, ¶ 4.) Thus, the plaintiffs may be required to reach the defendant's assets abroad to satisfy such a judgment, unless they could garnish debtors of the defendant located in the United States.
Nevertheless, the court assumes that the plaintiffs were cognizant of this potential difficulty in enforcing abroad any judgment obtained here when they first chose this forum in which to bring this action. Apparently, the benefits gained by choosing this forum outweighed the potential risk of difficult enforcement. Thus, the concerns raised by the fourth factor are insufficient to tip the scales in favor of the Italian forum against the strong presumption in favor of the plaintiffs' choice of forum.
Finally, under the sixth factor, the court is aware of the practical problem presented by the fact that the agreement provides that the Italian language version of the contract isexclusively valid. This provision most likely was inserted by the parties in recognition of the problem that writings in one language cannot always be translated to another with exactitude. In the event a material difference in translation exists, obviously a court fluent in the Italian language may be in a superior vantage point to determine the issue. However, on the state of this record, I am unable to determine how heavily the sixth factor tends to weigh in favor of the Italian forum, if at all. CT Page 12705
 3. Public Interest Factors
"The public interest factors include: (1) administrative difficulties for the courts, i.e., court congestion and the court's familiarity with the applicable law; (2) imposing the burden of jury duty on people of a community with no relation to the litigation; (3) holding trial in the view of interested persons; and (4) having matters decided in their local forum."Miller v. United Technologies Corp., supra, 40 Conn. Sup. 466.
The first factor is the most relevant as it cannot be said with regard to the remaining three factors that the Italian community has any stronger relation to or interest in this litigation than Connecticut's community. Connecticut's choice of law rules, as discussed previously, require the court to respect the parties' contractual choice of Italian law as applicable to this dispute. The plaintiffs correctly point out that" it is well established that considerations arising out of conflicts of law are not dispositive for the purpose of dismissals for forum non conveniens. . . . [T]he mere fact that the court is called upon to determine and apply foreign law does not present a legal problem of the sort which would justify the dismissal of a case otherwise properly before [it]. . . . Connecticut courts are quite capable of applying foreign law when required to do so and it would be improper to invoke the doctrine of forum non conveniens solely to avoid a choice of law analysis." (Citations omitted; internal quotation marks omitted.) Picketts v.International Playtex, Inc., supra, 215 Conn. 512. Moreover, the plaintiffs offer the affidavit of Giovanni Nardulli who attests that "Italian case law can be very easily tracked through the on-line computer system managed by the Supreme Court which is easily accessible and to which most Italian law firms are connected. The system contains all the cases of the Supreme Court and all published cases of the lower courts." (Nardulli Affidavit, ¶ 5.)
On the other hand, considerations beyond the mere fact that the applicable law is that of a foreign country, however, indicate that application of Italian law in this case may be difficult, time-consuming and burdensome for both the court and the litigants. The defendant offers the affidavit of Giuseppe Lombardi who attests that in civil law systems, such as in Italy, "case law analysis is much less highly developed than in common law systems. Civil law decisions are less detailed and elaborate than common law decisions. Many opinions are exceedingly CT Page 12706 brief. . . . Previous decisions are not analyzed in detail, even in the very rare instances where prior decisions are actually cited." (Lombardi Affidavit, ¶ 18.) Lombardi continues: "In contrast to the United States, where important decisions are typically printed in official and unofficial reporters, the reporting system in Italy . . . is far less complete and much more selective. Often only abstracts of decisions are printed." (Lombardi Affidavit, ¶ 19.)
Nevertheless, "[t]he mere fact that the court is called upon to determine and apply foreign law does not present a legal problem of the sort which would justify the dismissal of a case otherwise properly before [it]. . . . Connecticut courts are quite capable of applying foreign law when required to do so and it would be improper to invoke the doctrine of forum non conveniens solely to avoid a choice of law analysis." Picketts v.International Playtex, Inc., supra, 215 Conn. 512. Thus, the court is often called upon to apply foreign law and perceives no insurmountable obstacle in doing so' in this case.
 D. Conclusion
Weighing the private and public interest factors against the strong presumption in favor of the plaintiffs' choice of forum, I cannot say that the various considerations weigh sufficiently in favor of the Italian forum so as to justify an override "of the plaintiffs' choice of Connecticut as their preferred forum which has been aptly characterized by one court as a "thumb of significant proportions on the scales of justice." Betansky v.Opcon Asociations, Inc., Superior Court, judicial district of New Haven, Docket No. 421034 (April 15, 1999) (24 Conn. L. Rptr. 37). The defendant's motion to dismiss based on the doctrine of forum non conveniens is therefore denied.
 V. MOTION TO STAY
Prior to the plaintiffs' institution of this action in Connecticut, the defendant already had initiated an action against the plaintiffs in the Court of Milan, Italy. Examination of the plaintiffs' complaint in this action and the defendant's writ of summons in the Italian action reveals that in both cases the central issue is the propriety of the defendant's termination of the parties' agreement.
Where the plaintiffs' action in Connecticut and the CT Page 12707 defendant's action in Italy are materially duplicative, "[i]t makes little sense . . for two actions for the same relief to be litigated in parallel, with "the plaintiff in each seeking to rush to judgment.'" Sauter v. Sauter, 4 Conn. App. 581, 584,495 A.2d 1116 (1985). "In the interests of judicial economy, a court may, in the exercise of its discretion, order that the second action be stayed during the pendency of the first action, even though the actions are pending in different jurisdictions." Id., 584-85. "[S]uch a stay is not a matter of right and is not required, but rests within the discretion of the court in the exercise of which it must see that injustice is not done; and a stay should not be ordered if the opportunity to obtain satisfaction in the foreign suit is not as good as the domestic suit, or that it appears that the foreign suit was instituted merely to forestall the domestic suit." (Internal quotation marks omitted.) Id., 585.
The plaintiffs oppose the defendant's motion to stay this action, alleging that the defendant's institution of the suit in Italy was a classic "preemptive filing" designed to "forestall the domestic suit." The plaintiffs base this allegation on the fact that IIIva filed the Italian action on March 13, 1998, "even before it gave [the distributors] notice that it was terminating the Distribution Agreement" on March 18, 1998, thus assuring itself of winning the "race to the courthouse."
The court disagrees with the plaintiffs that the Italian action was instituted merely to forestall the domestic suit. As early as December 23, 1997, the plaintiffs were put on notice that Illva considered their actions to be in breach of the distribution agreement and that IIIva was terminating the contract "effective immediately." (Horowitz Affidavit, Exhibit 4.) That the parties attempted to avoid litigation and resolve their differences over the ensuing months is certainly commendable, but there is no indication that Illva ever retreated from its position that it considered the plaintiffs to be in breach of the contract and that the contract was terminated. Indeed, by registered letter dated February, 9, 1998, IIIva notified the distributors of its decision to stop filling their orders for the product. By letter dated February 16, 1998, the Chief Executive Officer of IDV-London responded, "I am particularly concerned about your statement that you have unilaterally decided to stop filling our orders for U.S. product. I urge you to reconsider this decision, which we consider to be a completely unwarranted, material breach of our Agreement that is CT Page 12708 causing daily harm to our organization. Please be advised that we reserve the right to take all appropriate remedies unless this situation can be rectified at once." (Horowitz Affidavit, Exhibit 6.) Thus, it is simply not true, as the plaintiffs claim, that it was not until Illva sent its termination letter dated March 18, 1998, that they knew they would have to sue Illva.
The court is satisfied that the filing of the Italian action was not an improper, preemptive filing designed to forestall suit here. Nor do the plaintiffs make any argument that their opportunity to obtain satisfactory resolution of their claims is not as good in Italy.
A stay leaves the court in a position to monitor the progress in the parallel litigation, and to reassert its juridiction over the parties' dispute if the interests of justice so dictate or require. It is abundantly clear that allowing parallel actions to proceed will require needless additional expenditures of time and resources of the litigants, counsel and the courts, will not further or promote judicial economy, and, may tend to encourage forum shopping and condone procedural gamesmanship at the expense of the interest of justice.
I conclude that the concept of judicial economy and the conservation of resources is overarching and must control. A stay would allow the parties to concentrate their time and energies in one form, thereby avoiding duplication of pleadings and discovery, confusion, expense, and perhaps, inconsistent rulings.
 CONCLUSION
In sum, for the foregoing reasons, the defendant's motion to dismiss on the grounds that the court lacks personal jurisdiction over the defendant, that the distribution agreement contains an exclusive forum selection clause, and, on the doctrine of forum non conveniens, is denied. The motion to stay is granted, and these proceedings are stayed until the Italian action is resolved or further order of the court.
Teller, J.